IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 19, 2013 Session

## DAN HAMPTON v. MACON COUNTY BOARD OF EDUCATION

**Direct Appeal from the Circuit Court for Macon County**
**No. 2012-cv-81     John D. Wooten, Judge**

---

**No. M2013-00864-COA-R3-CV - Filed January 10, 2014**

---

A school administrator filed the instant lawsuit, alleging that his employment was terminated in violation of both the Open Meetings Act and his contract of employment. The trial court granted summary judgment to the defendant school board on the Open Meetings Act claims on the basis of laches, finding that the school administrator failed to bring his claim in a timely manner. The trial court also granted summary judgment as to the contract claim, finding that the school administrator could not prove damages. We reverse the trial court's ruling with regard to the school administrator's claims for declaratory and injunctive relief pursuant to the Open Meetings Act, but affirm as to the remainder of the trial court's decision. Reversed in part, affirmed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part; Reversed in part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Fletcher W. Long and John E. Herbison, Clarksville, Tennessee, for the appellant, Dan Hampton.

Kenneth S. Williams, Cookeville, Tennessee, for the appellee, Macon County Board of Education.

## OPINION

### I. Background

Plaintiff/Appellant Dan C. Hampton, who has worked in education since 1973, was employed by the Defendant/Appellee Macon County Board of Education ("the School

Board") as Director of Schools. According to Mr. Hampton's contract with the School Board, executed on August 24, 2009, Mr. Hampton was employed for a fixed term from September 1, 2009 to June 30, 2011. Part of Mr. Hampton's job was to prepare the agenda for the School Board meetings, which are held on the second Thursday of every month.

On November 17, 2010, Mr. Hampton was informed by the Chairman of the School Board that a specially called meeting of the School Board was to be held on Friday, November 19, 2010. When asked, the Chairman allegedly refused to divulge the purpose of the meeting. The November 19 meeting occurred, with no written agenda, despite the fact that the preparation of a written agenda was the usual practice at the meetings. At the meeting, Mr. Hampton's employment was terminated by a vote of 4 to 1. According to the School Board's brief, the School Board voted to pay the remainder of Mr. Hampton's salary and benefits over the term of his employment contract, ending in June 2011. It is undisputed that Mr. Hampton received all salary and benefits under his contract of employment, notwithstanding the termination of his employment. According to Mr. Hampton, during his tenure with the School Board, he was never accused of criminal or professional misconduct. Also according to Mr. Hampton, the School Board gave no indication concerning the reason for the termination of his employment. The School Board then voted to rehire the School Board's prior Director of Schools, as the Interim Director, without publicly posting the vacancy in accordance with their usual custom.

According to Mr. Hampton's brief, after his employment was terminated, he diligently searched for replacement employment, but the fact that he was fired operated as a blemish on his record that prevented him from obtaining suitable full-time replacement employment. According to Mr. Hampton, he never had difficulty obtaining employment prior to his termination. Mr. Hampton's only work subsequent to his termination was that of a part-time consultant.

On January 24, 2012, Mr. Hampton filed a Complaint for a Declaratory Judgment, Injunctive Relief, and Damages, asserting that the Open Meetings Act had been violated, and that the School Board had breached Mr. Hampton's contract of employment. Specifically, the Complaint asked:

> d) That the Court declare the actions of the [School Board] in its special [sic] called meeting of November 19, 2010 to be void and of no effect under Tenn[essee] Code Ann[otated] § 8-44-105.
> e) That the Court order the [School Board] to reinstate Plaintiff in his employment as Director of Schools;
> f) That the Court permanently enjoin members of the [School

Board];

g) That he be awarded compensatory damages in an amount appropriate according to the proof in this cause;

h) That the costs of this action, including discretionary costs, be assessed against [the School Board]:

i) That he have further or general relief as may be appropriate under the facts and circumstances of this case.

On October 25, 2012, the School Board filed an answer, denying that Mr. Hampton was entitled to relief and specifically raising the defense of laches. Thereafter, on December 6, 2012, the School Board filed a motion for summary judgment, along with a statement of undisputed facts, affidavits, and exhibits. With regard to the Open Meetings Act claims, the School Board asserted that Mr. Hampton's action was barred by the doctrine of laches due to his delay in filing. The School Board further argued that there was no breach of contract because Mr. Hampton had been paid the full amount to which he was entitled under his employment contract. Finally, the School Board argued that as to any defamation or damage to reputation claims that may be fairly read from the Complaint, those actions sounded in tort and were barred by the applicable statute of limitations. Mr. Hampton filed a response on February 19, 2013. With regard to the laches argument, Mr. Hampton asserted that he delayed filing his case because he believed that pending litigation would prevent him from obtaining replacement employment. In addition, Mr. Hampton stated that had he been able to obtain appropriate employment, he would not have felt the need to file his Complaint; however, because he was unable to obtain replacement employment, he filed his Complaint for damages and, essentially, to clear his name. After arguments of counsel, the trial court entered an order granting summary judgment to the School Board on March 7, 2013. Specifically, the trial court stated:

1. With regard to [Mr. Hampton's] claims of damage to reputation and for compensatory damages as set out in the Complaint[,] the Court finds that these claims sound in tort, and are barred by the provisions of the Governmental Tort Liability Act[,] as well as the statute of limitations applicable to damage to reputation claims.

2. Concerning [Mr. Hampton's] contract claim[], the Court finds that [Mr. Hampton] received all the benefits to which he was entitled, and so has failed to establish the existence of any damages which are an essential element of his contractual claims.

3. As to [Mr. Hampton's] Open Meetings Act violation claims, the Court further finds that [Mr. Hampton] accepted his

-3-

contractual payments and waited quietly and without excuse, from the date of his termination until after his contract expired, without filing suit seeking to void any actions taken by the School Board in violation of the Open Meetings Act. The Court finds that laches applies under these facts, and that the plaintiff is equitably estopped from asserting violations of the Open Meetings Act.

Based on the foregoing, the Court finds the [School Board's] motion to be well taken and summary judgment is hereby granted in favor of the [School Board] as to all theories and claims, with costs to the [School Board] for which execution may issue. This is a final order.

From this order, Mr. Hampton now appeals.

## II. Issues Presented

Mr. Hampton raises one issue for review, which is taken from his brief:

1. Whether the trial court erroneously granted summary judgment to the Appellee where uncontested facts showed a violation of the Open Meetings Law by the Appellee Board of Education, in contravention of Mr. Hampton's contract of employment and that the Mr. Hampton has sustained damages resulting from such breach

However, as we perceive it, there are two issues in this case:

1. Whether the trial court erred in granting summary judgment on Mr. Hampton's claims under the Open Meetings Act?
2. Whether the trial court erred in granting summary judgment on Mr. Hampton's contract claim?

We conclude that the trial court erred in dismissing Mr. Hampton's claims for declaratory and injunctive relief under the Open Meetings Act on the basis of laches. However, we affirm summary judgment as to Mr. Hampton's request to be reinstated/returned to duty, as well as to Mr. Hampton's contract claim.

## II. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore de novo with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells,** 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. **Abshure v. Methodist Healthcare-Memphis Hosps.**, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. According to the Tennessee Legislature:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (effective on claims filed after July 1, 2011).

### IV. Analysis

### Open Meetings Act Claims

We begin first with Mr. Hampton's claims based on alleged violations of the Open Meetings Act. The Open Meetings Act, Tennessee Code Annotated Section 8-44-101, *et. seq.*, requires that meetings of any governing body are to be "open to the public at all times, except as provided by the Constitution of Tennessee." Tenn. Code Ann. § 8-44-102(a). Actions taken in violation of the Open Meetings Act are void *ab initio*: "Any action taken at a meeting in violation of this part shall be void and of no effect; provided, that this nullification of actions taken at such meetings shall not apply to any commitment, otherwise legal, affecting the public debt of the entity concerned." Tenn. Code Ann. § 8-44-105. Mr. Hampton argues that the School Board violated the Open Meetings Act when it terminated

his employment because the School Board's action in so doing was "unlawfully predetermined . . . prior to the November 19, 2010 meeting and was merely ratified at that meeting as a *fait accompli*."

For purposes of this appeal, the School Board does not deny that their meetings are subject to the Open Meetings Act. Instead, the School Board argues that Mr. Hampton's claims pursuant to the Open Meetings Act are barred by the doctrine of laches. This Court recently explained the doctrine of laches as an affirmative defense to a claim:

> "Unreasonable delay in pursuing rights calls the equitable doctrine of laches into play to prevent assertion of stale claims." ***Tennessee Pine Co. v. Via***, No. W1999-00558-COA-R3-CV, 2000 WL 34411147, at \*5 (Tenn. Ct. App. Aug. 25, 2000) (citing ***Nunley v. Nunley***, 925 S.W.2d 538, 542 (Tenn. Ct. App.1996)). However, delay, by itself, is not sufficient to invoke the doctrine of laches. ***Id.*** The determinative test "is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay." ***Id.*** (quoting ***Nunley***, 925 S.W.2d at 542). "Generally, the doctrine of laches applies to actions not governed by a statute of limitations."[1] ***Briceno v. Briceno***, No. M2006-01927-COA-R3-CV, 2007 WL 4146280, at \*4 (Tenn. Ct. App. Nov. 21, 2007) (citing ***Gleason v. Gleason***, 164 S.W.3d 588, 592 (Tenn. Ct. App. 2004); ***Dennis Joslin Co. v. Johnson***, 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003)). Where the action is governed by a statute of limitations, the doctrine of laches may shorten that time period if the plaintiff is guilty of gross laches by unreasonably acquiescing in adverse rights for a long duration of time, causing "prejudice to the defendant such as the loss of evidence and witnesses or a considerable accumulation of interest resulting from the unjustified delay of the plaintiff." ***Id.*** (citations omitted). "It is an equitable defense which requires the finder of fact to determine whether it would be inequitable or unjust to enforce the claimant's rights." ***Estate of Baker v. King***, 207 S.W.3d at 264.

***Grand Valley Lakes Property Owners Ass'n, Inc. v. Burrow***, 376 S.W.3d 66, 83–84 (Tenn.

---

[1] It is undisputed that the Open Meetings Act contains no express statute of limitations. *See* Tenn. Code Ann. § 8-44-101, *et. seq.*

Ct. App. 2011).

The trial court's decision to dismiss a claim on the basis of laches is reviewed under the abuse of discretion standard:

> A trial court's decision regarding whether to apply the doctrine of laches will not be reversed absent an abuse of discretion. ***Id.*** at \*3; ***Estate of Baker***, 207 S.W.3d at 264; ***Griffin v. Lester***, No. W2004-02072-COA-R3-CV, 2005 WL 3199279, at \*5 (Tenn. Ct. App. Nov. 30, 2005); ***Tennessee Pine Co.***, 2000 WL 34411147 at \*6. Under the abuse of discretion standard, the trial court's decision "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." ***Camp v. Camp***, No. W2010-01037-COA-R3-CV, 2011 WL 2567542, at \*5 (Tenn. Ct. App. June 29, 2011) (quoting ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). The abuse of discretion standard involves "a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010) (citing ***Beard v. Bd. of Prof'l Responsibility***, 288 S.W.3d 838, 860 (Tenn. 2009)). The standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." ***Lee Medical, Inc.***, 312 S.W.3d at 524 (citing ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Accordingly, appellate courts are not permitted to "second guess" the trial court's determinations or to substitute their judgment for that of the trial court. ***Lee Medical, Inc.***, 312 S.W.3d at 524 (citing ***White v. Vanderbilt Univ.***, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." ***Lee Medical, Inc.***, 312 S.W.3d at 524 (citing ***Boyd v. Comdata Network, Inc.***, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

***Grand Valley***, 376 S.W.3d at 84.

Thus, in order for laches to apply, the School Board must show not only that Mr. Hampton unreasonably delayed the filing of the action, but that the delay in filing caused prejudice to the party asserting the laches defense. *See **Dennis Joslin Co., LLC v. Johnson***,

138 S.W.3d 197, 200 (Tenn. Ct. App. 2003) ("[The doctrine of laches] requires an unreasonable delay that prejudices the party seeking to employ laches as a defense, and it depends on the facts and circumstances of each individual case."). We turn to consider these two elements, delay and prejudice, as applied to the undisputed facts of this case.

Here, the trial court clearly determined that Mr. Hampton's action in waiting nearly nineteen months from his termination and seven months from the expiration of his contract constituted an unreasonable and inexcusable delay. We find no abuse of discretion in the trial court's determination that Mr. Hampton's delay was unreasonable. Mr. Hampton asserts that he delayed bringing his suit in order to pursue replacement employment. However, we cannot conclude that the trial court abused its discretion in concluding that Mr. Hampton's apparently unsuccessful attempt to obtain replacement employment justifies his delay. Indeed, Mr. Hampton was fully aware of any wrong that may have been committed on November 19, 2010. The voluntary decision to delay filing this lawsuit for strategic purposes is simply insufficient to show that the trial court abused its discretion in finding that the delay was unjustified.

The trial court, however, made no findings or conclusions at to whether the School Board was prejudiced by the delay, an essential element of the defense of laches. As discussed above, the decision to apply the doctrine of laches is reviewed under the abuse of discretion standard. *See Grand Valley*, 376 S.W.3d at 84. However, when the trial court fails to make findings of fact or conclusions of law to support its decisions, we must independently review the record to determine whether the appropriate elements have been met. *See Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934, at *10 (Tenn. Ct. App. July 31, 2013) (declining to apply the abuse of discretion standard in a parenting plan case when the trial court failed to make sufficient findings of fact to support its decision). Accordingly, we will review the record to determine whether the undisputed facts support a finding that the School Board was prejudiced by Mr. Hampton's delay.

At the outset, in order to determine whether the School Board was prejudiced by Mr. Hampton's delay, we must first determine what claims Mr. Hampton asserts with regard to his allegation that the School Board violated the Open Meetings Act. The Complaint in this case is not a model of clarity, and consequently, there was considerable dissension in the trial court as to the claims asserted by the Mr. Hampton. From our reading of the Complaint, we conclude that Mr. Hampton seeks three forms of relief from the alleged Open Meetings Act claim: (1) A request for a Declaratory Judgment that the termination was in violation of the Open Meetings Act, and that, therefore, the termination was void *ab initio*; (2) Reinstatement of his employment, which we will refer to as "return to duty;" and (3) A request for an

injunction preventing the School Board from engaging in such behavior in the future.[2]

With regard to the "return to duty" claim, we agree with the School Board that Mr. Hampton's failure to file his claim until after his contract for employment had expired caused prejudice to the School Board. As previously discussed, Mr. Hampton's contract expired on June 30, 2011. However, Mr. Hampton did not file this suit until January 24, 2012, nearly seven months later. As of June 30, 2011, however, regardless of whether Mr. Hampton's employment was properly or improperly terminated, Mr. Hampton had no right to "return to duty." If this Court were to return Mr. Hampton to duty now, after the natural expiration of his contract, this Court would be rewriting Mr. Hampton's contract of employment. That is simply something this Court cannot do. *See* ***Bernier v. Morrow***, No. M2012-01984-COA-R3-CV, 2013 WL 1804072 (Tenn. Ct. App. April 26, 2013) ("[T]his Court simply cannot rewrite the parties' contract."). In addition, during the period of Mr. Hampton's contract after his termination, the School Board paid for an Interim Director to fill Mr. Hampton's position for the remainder of his contract. The School Board also undisputedly continued to pay the balance on Mr. Hampton's contract for employment. If Mr. Hampton had promptly brought his suit and had successfully obtained reinstatement for the duration of his contract, the School Board would not have been required to pay both salaries. *See* 30A C.J.S. Equity § 147 (2013) (noting that one form of prejudice occurs when "money or valuable services will be wasted as a result of the delay"). Under these circumstances, we conclude that the School Board would be prejudiced in having to defend against the reinstatement of an employee who has no right to be reinstated beyond the original contract terms. Accordingly, we affirm the dismissal of this claim on the basis of laches.

The School Board, however, has submitted no evidence that it would be prejudiced in having to defend against Mr. Hampton's remaining Open Meetings Act claims. Indeed,

---

[2] From our review of Mr. Hampton's Complaint, his request for monetary damages is based on the allegation that the School Board breached the duty of good faith implied in Mr. Hampton's employment contract, discussed *infra*. However, to the extent that Mr. Hampton's Complaint may be read to seek damages solely as a result of alleged violation of the Open Meetings Act, we conclude that such request is inappropriate. The appropriate remedies for violations of the Open Meetings Act are defined by Tennessee Code Annotated Sections 8-44-105 and 8-44-106. First, Section 8-44-105 directs a court to declare void any action taken in violation of the Open Meetings Act. Tenn. Code Ann. § 8-44-105. Second, Section 8-44-106 allows the court to "issue injunctions, impose penalties, and otherwise enforce the purposes of this part." Tenn. Code Ann. § 8-44-106(a). The Tennessee Supreme Court, in considering the constitutionality of the previous version of the Open Meetings Act, held that the ability of courts to "impose penalties" for violations of the Open Meetings Act "is limited to citation for contempt for violation of an injunction issued after a finding of failure to comply with the requirements of the Act." ***Dorrier v. Dark***, 537 S.W.2d 888, 892 (Tenn. 1976). There is no allegation that the School Board violated an injunction already in place in this case. Accordingly, the court is not at liberty to impose any monetary penalties solely as a result of the alleged violation of the Open Meetings Act.

the School Board, in its brief to this Court, does not appear to assert any alleged prejudice or harm that would occur by allowing Mr. Hampton to proceed on his claims for declaratory and injunctive relief. This Court has previously held that in order for laches to apply, there must be some showing of actual prejudice by the party asserting the defense of laches. For example, in *Keith v. Regas Real Estate Co.*, No. E2011-00337-COA-R3-CV, 2011 WL 6009625 (Tenn. Ct. App. Dec. 2, 2011), this Court noted that in usual cases of laches, the trial court finds prejudice through the loss of evidence, the death of witnesses, or the loss of memory caused by the delay. *Id.* at *6 (citing *Brown v. Ogle*, 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000)). However, because the party asserting the defense of laches in *Keith* "ha[d] not provided any [such] examples of actual prejudice that would occur if the suit were to proceed," the Court concluded that the trial court erred in dismissing the case on the basis of laches. *Keith*, 2011 WL 6009625, at *6. Thus, a party asserting the defense of laches must submit some evidence that it was prejudiced by the delay in filing suit:

> Prejudice is an essential element of the assertion of laches. "Legal prejudice" results when there is a loss or injury to a person who relies on another person's voluntary failure to exercise a legal right. The mere passage of time will not give rise to an inference of prejudice, for the purposes of establishing that element of a laches claim. Accordingly, in addition to delay by a person asserting a legal right, laches requires a resultant injury or prejudice by reason of the delay, or a change in the condition of the property or relations of the parties rendering it inequitable to enforce the legal right.
>
> However, not every change in conditions will constitute prejudice within the doctrine of laches, and whether an injury cognizable under the doctrine of laches occurs depends on assessing the inherent equities of the particular case. Laches is usually involved in situations where the delay in prosecuting the claim has made the claim harder to defend against, or where money or valuable services will be wasted as a result of the delay. Prejudice, supportive of laches, may thus be demonstrated by a showing of injury, change of position, loss of evidence, unavailability of witnesses, or some other disadvantage resulting from delay, which diminish a defendant's chances of success.
>
> Plaintiff is only held accountable for that degree or amount of prejudice which flows from, and was accrued during, plaintiff's period of unreasonable and [i]nexcusable delay and plaintiff is not held responsible for prejudice which cannot be directly traced to plaintiff's own dilatory actions.

Thus, in the context of a defense based on laches, delay is not a bar unless it works to the disadvantage or prejudice of other parties. Where no one has been harmed in any legal sense and the situation has not materially changed, the delay is not fatal. Thus, even where impermissible delay is present under the circumstances presented, if the delay has not prejudiced the party asserting the laches defense, it will not bar the equitable action. Furthermore, a party cannot assert the defense of laches if he or she actually benefitted from the delay.

Prejudicial harm does not occur merely because one loses what he or she otherwise would have kept. There must be a delay which causes a disadvantage in asserting and establishing a claimed right or defense, or other damage caused by detrimental reliance.

Prejudice is not presumed, but rather must be affirmatively demonstrated. The party asserting the defense of laches must present evidence demonstrating prejudice from the lapse of time that he or she claims has resulted from the opposing party's failure, due to want of diligence, to promptly institute an action.

30A C.J.S. Equity § 147 (2013) (footnotes omitted).

In this case, we conclude that the School Board has failed to meet its burden to show prejudice based on the undisputed facts of the case with regard to Mr. Hampton's declaratory and injunctive relief claims pursuant to the Open Meetings Act. Therefore, the School Board is not entitled to summary judgment on the basis of laches for these claims. The School Board has not shown that it will be unable to defend against the remaining claims, that it has been disadvantaged in any way, or that money or valuable services have been wasted as result of the delay in filing these particular claims. Without some showing of prejudice, the application of the doctrine of laches is inappropriate. Consequently, we reverse the trial court's grant of summary judgment in favor of the School Board with regard to Mr. Hampton's claims for declaratory relief and injunctive relief pursuant to the Open Meetings Act. Because summary judgment was inappropriate as to Mr. Hampton's requests for a declaratory judgment and an injunction pursuant to the Open Meetings Act, we remand to the trial court for further proceedings on these two claims. We express no opinion as to the question of whether Mr. Hampton is ultimately entitled to either declaratory or injunctive relief upon remand.

**Contract Claim**

-11-

We next consider whether the trial court erred in granting summary judgment to the School Board with regard to Mr. Hampton's breach of contract claim. The trial court granted the School Board's motion, finding that as Mr. Hampton had been paid the full amount of salary and benefits under his contract, he was unable to prove damages, an essential element of his contract claim. We agree.

There are two forms of employment in Tennessee—employment at-will and contractual employment. According to the Tennessee Supreme Court:

> [The employment at-will] doctrine applies in the absence of a contract of employment, and it means that an employment relationship generally can be terminated by either the employer or the employee with or without cause. *See **Bennett v. Steiner-Liff Iron and Metal Co.***, 826 S.W.2d 119, 121 (Tenn. 1992). Therefore, in Tennessee, unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer because there is no right to continued employment. *See **Forrester v. Stockstill***, 869 S.W.2d 328, 330 (Tenn. 1994).
>
> In contrast, a definite term employment contract ordinarily may not be terminated before the expiration of the contract period, except for good cause or by mutual agreement. ***Bennett***, 826 S.W.2d at 121. When a contract of employment is breached, the proper measure of damages is the salary that would have been earned had the contract not been breached, less any amount the employee earned or should have earned in the exercise of reasonable diligence in some other employment during the unexpired contract term. *See **State ex rel. Chapdelaine v. Torrence***, 532 S.W.2d 542, 550 (Tenn.1975); ***Jeffers v. Stanley***, 486 S.W.2d 737, 739 (Tenn. 1972); ***Akers v. J.B. Sedberry, Inc.***, 39 Tenn. App. 633, 286 S.W.2d, 617, 622 (1955); ***Godson v. MacFadden***, 162 Tenn. 528, 39 S.W.2d 287, 288 (1931).

***Cantrell v. Knox County Bd. of Educ.***, 53 S.W.3d 659, 662 (Tenn. 2001).

The employment at issue in this case was based on a contract. Mr. Hampton alleges that the School Board breached his contract when it terminated his employment in violation of the Open Meetings Act, which he alleges is a violation of the duty of good faith implied

in all contracts. *See **Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.***, 395 S.W.3d 653, 660 (Tenn. 2013) ("It is well-established that "[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts.") (quoting ***Wallace v. Nat'l Bank of Commerce***, 938 S.W.2d 684, 686 (Tenn.1996)). Thus, Mr. Hampton's claim is one for breach of contract. "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." ***ARC LifeMed, Inc. v. AMC-Tennessee, Inc.***, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). To prevail on any breach of contract claim, the plaintiff must prove all elements.

The School Board argues, and the trial court found, that Mr. Hampton was unable to prove the he suffered any damages as a result of any alleged breach of the employment contract. As previously discussed, the measure of damage in a breach of employment contract context is "the salary that would have been earned had the contract not been breached, less any amount the employee earned or should have earned in the exercise of reasonable diligence in some other employment during the unexpired contract term." *See **Cantrell***, 53 S.W.3d at 662. The contract at issue provided that Mr. Hampton would be paid his salary and benefits through June 30, 2011. Accordingly, his damages for any alleged breach of that contract would be his full salary and benefits through June 30, 2011. *See **id.*** In this case, however, it is undisputed that Mr. Hampton was paid the full amount of his salary and benefits for the duration of his contract, notwithstanding the termination of his employment. Accordingly, Mr. Hampton can prove no damages as a result of the alleged breach of his employment contract.

Mr. Hampton argues, however, that he has suffered damages other than just the loss of salary due to his allegedly wrongful termination, including harm to his reputation. Mr. Hampton fails to cite any authority for his assertion that he can claim loss of reputation as a result of an alleged breach of contract. From our research it appears that such damages are usually not favored. *See* 22 Am. Jur. 2d Damages § 61 ("A plaintiff cannot recover for damage to its reputation arising out of an alleged breach of contract."); 30 C.J.S. Employer–Employee § 130 ("In an action for wrongful discharge in breach of contract, damages are not recoverable for noneconomic loss. Such losses include injury to reputation, goodwill, or health, or for physical pain and suffering, or mental or emotional distress or suffering.") (footnotes omitted); 24 Williston on Contracts § 66:4 (4th ed. 2013) ("[T]he courts are in agreement that consequential damages for harm to reputation are not recoverable [in a breach of contract action], because they are altogether nonquantifiable and speculative." *but see* 96 A.L.R.3d 437, § 2 (noting that special damages for harm to reputation are sometimes allowed in contracts involving those in the literary, artistic, or entertainment fields); 24 Williston on Contracts § 66:4 (providing that a wrongfully discharged professional employee "may recover consequential damages for the loss of

'identifiable professional opportunities;'" however, noting that the employee must "allege[] and prove[] with specificity that the defendant's breach actually adversely influenced or affected future job opportunities").

Regardless of whether damage to reputation is properly recoverable in a breach of contract action, we conclude that Mr. Hampton is not entitled to such damages because he failed to seek them in the trial court. From our review of Mr. Hampton's Complaint, Mr. Hampton sought only compensatory and general damages from the alleged breach of contract; Mr. Hampton's Complaint does not seek recovery of any consequential or special damages. Rule 9.07 of the Tennessee Rules of Civil Procedure provides that: "When items of special damage are claimed, they shall be specifically stated." "The fundamental purpose of the pleading requirement in [Rule] 9.07 is notice." ***Keisling v. Keisling,*** 92 S.W.3d 374, 377 (Tenn. 2002); ***Castelli v. Lien***, 910 S.W.2d 420, 429 (Tenn. Ct. App. 1995). According to the Tennessee Practice Series:

> Several significant procedural rules govern special and general damages. General damages need not be identified with particularity in the plaintiff's complaint, because they are the proximate and necessary result of the breach, and a defendant has notice of them as a matter of law of their existence. The law does not imply special damages from a breach, however, because they are not the necessary result of the defendant's breach. Therefore, to prevent unfair surprise to the defendant at trial, the plaintiff must specify these damages in the complaint, or else risk not being able to give evidence upon them at trial.

22 Tenn. Prac. Contract Law and Practice § 12:10 (2013). Thus, special damages must be specifically pleaded to prevent unfair surprise to the defendant.

This Court has previously treated "special damages" as synonymous with "consequential damages" and has stated:

> Consequential or "special" damages are defined in Black's [Law Dictionary] as "[s]uch damage as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." The rule from the venerable and familiar case of ***Hadley v. Baxendale***, 9 Ex. 341, 156 Eng. Rep. 145 (1854) states that consequential damages will only be awarded if they could reasonably be supposed to have been within the contemplation of the parties at

> the time of contracting, as a probable consequence of a breach of contract. The **Baxendale** rule has been seconded many times by our Tennessee courts. *See, for example,* ***Lane v. Associated Housing Developers***, 767 S.W.2d 640 (Tenn. Ct. App. 1988); ***Turner v. Benson***, 672 S.W.2d 752 (Tenn. 1984).

***Wills Electric Co., Inc., v. Mirsaidi***, M2000-02477-COA-R3-CV, 2001 WL 1589119, at *4 (Tenn. Ct. App., Dec.13, 2001). Accordingly, both special and consequential damages are subject to the requirements of Rule 9.07.

Tennessee courts have referred to harm caused by loss of reputation as a form of consequential damages. *See, e.g.,* ***Austin v. Sneed***, No. M2006-00083-COA-R3-CV, 2007 WL 3375335, at *11 (Tenn. Ct. App. Nov. 13, 2007) ("[C]onsequential damages can include damages for emotional distress and related personal injuries, injuries to reputation, [and] economic losses."); ***Sabaski v. Wilson County Bd. of Educ.***, No. M2010-00872-COA-R3-CV, 2010 WL 5289798, *5 (Tenn. Ct. App. Dec.17, 2010) (referring to harm to reputation as a form of consequential damages) (citing ***United States v. Burke***, 504 U.S. 229, 239, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34 (1992)). In addition, as previously discussed, the Tennessee Supreme Court has defined the typical measure of damages in a breach of an employment contract context; harm to reputation is not included in the Tennessee Supreme Court's measure of damages in this context. *See* ***Cantrell***, 53 S.W.3d at 662. Thus, we must conclude that damages caused by harm to reputation in a breach of an employment contract context, if recoverable at all, are special damages pursuant to Rule 9.07. Accordingly, regardless of whether harm to reputation is an appropriate measure of damages in a breach of employment contract case, Mr. Hampton's failure to plead such damages pursuant to Rule 9.07 is fatal to his claim. The trial court's decision to grant summary judgment to the School Board on this claim is, therefore, affirmed.

### V. Conclusion

The judgment of the Macon County Circuit Court is reversed in part, affirmed in part, and remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Dan C. Hampton, and his surety, and one-half to Appellee Macon County Board of Education, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE