EDD FREEMAN et al., Appellees, v. MARTIN
ROBOWASH, INC., J. MAC FUTTRELL, JR.,
Individually, and J. Mac Futrell, and Winnie Futrell,
Co-Executors of the Estate of J. Mac Futrell, Sr.,
et al., Appellants.—457 S.W.2d 606.

Western Section. June 15, 1970.

Certiorari Denied by Supreme Court September 8, 1970.

680

Marvin Hawks and Keith V. Moore, Memphis, George C. Thomas, Dresden, for Martin Robowash, Inc.

Harold T. Brundige, Martin, for appellants Futrell.

Homer W. Bradberry, and William A. Largen, Dresden, for appellees.

MATHERNE, J. Complainants filed suit in equity wherein they seek a decree declaring title in them to a certain town lot in Martin, Tennessee, and a decree setting aside as null and void a deed under which defendant Martin Robowash, Inc. holds possession of the lot. The Chancellor, hearing the case on oral testimony without a jury, held in favor of the Complainants and decreed them the owners of the lot in question.

The appellants are the original defendant Martin Robowash, Inc. and its immediate predecessor in title, the Futrells, who by separate appeal present the following issues: (1) The Chancellor erred in declaring defendant's deed null and void and holding title to the property in the

complainants; (2) The complainants are estopped to assert any claim to the land; and (3) The complainants are guilty of such laches as to bar their action in this cause.

On this appeal the determination of all issues of fact and law shall be de novo upon the record as made in the Chancery Court, with a presumption of the correctness of Chancellor's decree on all issues of fact, unless a preponderance of the evidence is to the contrary. T.C.A. sec. 27-303. Where the evidence preponderates against the finding of the Chancellor it is the duty of the Court of Appeals to enter such decree 'as the law and evidence warrant. Loftis v. Stuyvesant Ins. Co. (1964) 54 Tenn. App. 371, 390 S.W.2d 722.

Complainants are the heirs at law of Jeff Freeman who died intestate in 1945. Complainants insist Jeff Freeman obtained the lot in question along with other land contiguous thereto by two deeds. One deed, filed as Exhibit 1, is from T. N. Bell and conveys the land therein described to "Jeff Freeman and his heirs and assigns," dated December 31, 1907, recorded in 1908 (exact date not clear) in Deed Book 34, page 767, Register's Office of Weakley County, Tennessee. This lot will be hereinafter referred to as the Bell Lot. The other deed, filed as Exhibit 2, is from Rollie Clemons and conveys the land therein described to "Jeff Freeman and his heirs and assigns," dated November 23, 1918, recorded on April 2, 1964 in Deed Book 122, page 573, Register's Office of Weakley County, Tennessee. This lot will be hereinafter referred to as the Clemons Lot.

The deed conveying the Bell Lot to Jeff Freeman contains the following description:

"Beginning at a stake at S. E. Corner of Rollie Clemens' lot, runs east with Earnest Lawler's lot 76 ft. to Right of way of I.C.R.R. thence with I.C.R.R. 103 ft. to a stake, thence west 79 ft. to Rollie Clemens' northeast corner, thence south 103 ft. to the beginning."

The deed conveying the Clemons Lot to Jeff Freeman contains the following description.

"Beginning at a stake at the S. W. Corner of said Jeff Freeman's homeplace, and runs thence north with his west line One hundred and three (103) poles to a stake; thence west about Seventy-nine poles to a stake; thence south One hundred and three (103) poles to a stake; thence east Seventy-six (76) poles to the beginning."

The Clemons Lot and the Bell Lot adjoin with the Bell Lot to the east of the Clemons Lot. From these descriptions it is obvious the Bell Lot adjoins the Railroad on the east. The proof is clear Jeff Freeman purchased and claimed no property other than by virtue of these two deeds. The proof establishes that under these two deeds Jeff Freeman from the year 1918 occupied and used as his own a strip of land approximately 103 feet wide extending from the Railroad westerly to a point beyond where Highway No. 45 is now located. When Highway No. 45 was constructed it cut across the western end of this strip of land. Jeff Freeman sold that portion of the land cut off west of Highway No. 45. Jeff Freeman also sold out of the southwest corner of this strip a lot approximately 103 feet east and west by 55 feet north and south to his son-in-law Kid Chandler. It is not clear whether the Chandler sale was made before or after Highway 45 was constructed, however, this is immaterial because the title to the Chandler lot is not in question. The sale to

Chandler is of importance in establishing Jeff Freeman's claim to the strip of land between the Railroad and Highway No. 45.

After the death of Jeff Freeman his widow Eula Freeman continued to live in the home of the couple which was located on the Bell Lot. Eula Freeman occupied the entire strip of land until her death in 1964. Eula Freeman never bought any land, and claimed only this strip of land which was owned by Jeff Freeman at the date of his death. In the year 1962 one E. T. Fuller negotiated to purchase the Chandler Lot from the owners thereof, and negotiated to purchase from Eula Freeman that portion of the Freeman strip which bordered Highway No. 45 on the west. This resulted in Eula Freeman conveying to E. T. Fuller, et al. the lot in controversy for the sum of $1400.00. This lot is off the western end of the Freeman strip of land, bordered on the west by Highway No. 45, and lies to the north and east of the Chandler Lot. The lot in controversy is described as follows:

"BEGINNING at a stake in the east margin of U.S. Highway No. 45-E and at Wright's S.W.C., and runs thence south with said Highway No. 45-E 55 feet to a stake at Chandler's northwest corner; thence east 103 feet to a stake at Chandler's N.E.C.; thence south 55 feet to a stake at Chandler's S.E.C.; thence east 47 feet to a stake; thence north 110 feet to a stake; thence west 150 feet to the beginning."

The Chandler lot and the lot in controversy were conveyed to other parties until by deed dated July 26, 1968 J. Mac Futrell, Sr., and J. Mac Futrell, Jr. conveyed both lots to the defendant Martin Robowash, Inc. for the consideration of $15,000.00 which deed is recorded in Deed

Book 135, page 592, Register's Office Weakley County, Tennessee.

In support of its insistence that the lot in controversy was never owned by Jeff Freeman, the defendant introduced a surveyor and a prepared survey of the strip of land between the Railroad and Highway No. 45. According to this witness the pole calls for distances in the deed to the Clemons Lot would have to be converted to foot calls in distance in order to reconcile the Clemons Lot to the Bell Lot and locate them as adjoining lots. According to this survey, after making the above correction in the deed to the Clemons Lot, these lots would adjoin and both lots would extend westerly from the Railroad a distance of 158 feet on the north side and a distance of 152 feet on the south side. This survey also cut out of the west end of this strip the Chandler Lot and the lot in controversy, both of which border Highway No. 45 on the west. After surveying out the Clemons Lot and the Bell Lot on the east end of the strip, and the Chandler Lot and the lot in controversy on the west end of the strip, there was a small amount of land left in the middle of the strip not covered by the calls of any of the four deeds.

The defendant argues this survey establishes the land owned by Jeff Freeman as shown thereon, and the complainants inherited only that land as heirs at law of Jeff Freeman. The defendant insists it is not possible for the Clemons Lot and the Bell Lot to include the lot in controversy. This argument overlooks the fact that Jeff Freeman occupied and used as his own the entire strip, less the Chandler Lot, from 1918 until his death in 1945, or for a period of twenty-seven years. In the face of this established fact of long occupancy by Jeff Freeman the

survey is of little value except to show the relative position of each lot being discussed.

A deed to be valid must designate the land intended to be conveyed with reasonable certainty. Sheffield v. Franklin (1947) 32 Tenn.App. 532, 222 S.W.2d 974. If we hold the deed to the Clemons Lot to be so insufficient in its description as to fail the foregoing test, the title to the land between the Railroad and Highway No. 45, under all the proof in this case, would have vested in Jeff Freeman under the common law doctrine of presumption of title. Title under this doctrine does not require even color of title, and is defined in Cannon v. Phillips (1834) 34 Tenn. 211 at 214 as follows:

"The doctrine of presumption of title rests upon the simple fact of long-continued use and enjoyment, and requires no aid for 'color of title.' Possession of land is prima-facie evidence of title; the law supposes that it had a legal origin, and when undisturbed for the period of twenty years, it becomes, in view of the law, an assurance of title of no less force or efficacy than the actual grant whose place it supplies. The presumption is not founded upon the idea that as a matter of fact a grant once existed, nor is it aided by the fact that the possession may have been held under some defective form of assurance: it rests alone upon a principle of public policy, to quiet the title of those who can show no other title than long-continued possession and use."

For similar holdings, see also: King v. Coleman (1897) 98 Tenn. 561, 40 S.W. 1082; Keel v. Sutton (1919) 142 Tenn. 341, 219 S.W. 351; Preston v. Smith (1956) 41 Tenn.App. 222, 293 S.W.2d 51. We therefore conclude, under the facts of the case, title to the lot in controversy

vested in Jeff Freeman under the common law doctrine of presumtion of title.

The defendant also argues there is no proof Eula Freeman failed to convey good title by her deed to Fuller, et al. in 1962, and this burden of proof is on the complainants. The complainants present at trial testified they and Eula Freeman thought Eula Freeman owned the land after the death of Jeff Freeman. These complainants were under the impression the widow inherited from the intestate husband, and under this supposed right they treated her as the owner. The defendant put on no proof as to how Eula Freeman acquired the lot in controversy. If we treat this holding by Eula Freeman from the death of Jeff Freeman in 1945 to the date of her deed to Fuller, et al. on April 25, 1962 as being in her own right, and not by mistake or misunderstanding, that seventeen year period would not have vested title in Eula Freeman under the common law doctrine of presumption of title. We therefore conclude Eula Freeman conveyed only her widow's rights to the lot in controversy by her deed to Fuller, et al.

It results Assignments of Error I, II, III, IV and V as filed by Martin Robowash, Inc., and Assignments of Error I, II, III and V of appellants Futrell are overruled.

The defendant insists the complainants by their acts are estopped to now assert their right in the property. The defendant claims the complainants received the benefits of the $1400.00 paid by Fuller, et al. to Eula Freeman for the lot, and having accepted the benefits of the transaction they cannot now attack the deed as void. The proof shows this $1400.00 was placed in the bank and Edd

Freeman spent it improving the house on the Bell Lot in which his mother Eula Freeman resided. It is not shown how much was spent on personalty and on realty, however, we find from the record the money was spent for the comfort and benefit of Eula Freeman. After the death of Eula Freeman the dwelling burned and the administratrix of her estate collected $3,000.00 fire insurance coverage. This amount was paid to the complainants in their respective shares as the heirs at law of Eula Freeman. It is because of this receipt of insurance coverage by the complainants the defendants claim estoppel.

In order to create an estoppel by the acceptance of benefits, it is essential the party sought to be estopped should have acted with knowledge of the facts and of his rights. It is also essential the party asserting the estoppel was without knowledge or means of knowledge of the facts on which he bases his claimed estoppel, was influenced by and relied on the conduct of the person sought to be estopped, and changed his position in reliance thereon to his injury, or was misled thereby to his prejudice. 31 C.J.C. Estoppel sec. 109, pp. 561-562.

The proof establishes these complainants thought the lot in question and the dwelling belonged to Eula Freeman at the time the deed from Eula Freeman to Fuller, et al. was executed, and at the time the insurance money was collected through the executrix of her estate. It is therefore obvious the complainants against whom estoppel is hereby asserted, did not, at the time of the acts complained of, have knowledge of the true facts and of their rights. It is also established by the record the defendants did not rely on these acts of the complainants in accepting the insurance money and change their posi-

tion accordingly, nor were they in any way prejudiced or misled by these acts of the complainants. We conclude the complainants under these facts are not estopped to attack the deed to the lot in controversy and these Assignments of Error are overruled.

The defendant alleges the complainants are guilty of such laches as to bar their recovery herein. The defendant claims these complainants knew of their rights as of the recordation of the deed to the Clemons Lot in 1964. Defendant asserts the complainants stood idly by and permitted the defendant Martin Robowash, Inc. to buy the property in 1968 and expend much money in the improvement thereof all to the detriment of defendant under the now belated claim of the complainants.

The defense of laches is based on the doctrine of equitable estoppel, and is only applied where the party invoking it has been prejudiced by the delay. State v. McPhail (1928) 156 Tenn. 459, 2 S.W.2d 413; State v. Benner, 182 Tenn. 395, 187 S.W.2d 609. The applicability of the defense of laches is dependent upon the facts presented in each case in which it is plead. State ex rel. Wilson v. Mays (1950) 190 Tenn. 156, 228 S.W.2d 97. The courts are reluctant to sustain the defense of laches, and in a case where the delay in filing the suit can be reasonably explained or justified, such a defense will not be heard. Whitehaven Utility District of Shelby County v. Ramsey (1964) 215 Tenn. 435, 387 S.W.2d 351.

The clear preponderance of the evidence establishes the complainants had no knowledge of their right in the lot in controversy until after the deed to the defendant Martin Robowash, Inc. dated July 26, 1968. Complainant Edd Freeman observed the defendant beginning to make

improvements on the lot and concluded the defendant was encroaching on the land of complainants. Edd Freeman thereupon took the deeds to the Bell Lot and the Clemons Lot to the office of his attorney to see about this encroachment. At that time he was advised of the condition of the title to the lot in controversy. Edd Freeman and his attorney went to the lot in controversy and the proof is clear the claim of complainants was conveyed to the parties present doing the improvement work. The proof establishes only the foundation to the building being constructed by the defendant was laid at that time. The present suit was filed on October 14, 1968. The proof establishes the defendant continued with its expenditure of money in completion of the building after this suit was filed.

The defense of laches presents a mixed question of law and fact. Two essential elements of fact are negligence and unexcused delay on the part of the complainant in asserting his alleged claim, which result in injury to the party pleading laches. Sunderhaus v. Perel & Lowenstein (1965) 215 Tenn. 619, 388 S.W.2d 140. The question whether in view of the established facts, relief is to be denied—that is, whether, it would be inequitable or unjust to the defendant to enforce the complainants' right—is a question of law. 27 Am. Jur.2d, Equity, sec. 176, pp. 722-723.

Under the record in this case the Chancellor could have readily found the complainants were not guilty of negligence and unexcused delay in asserting their claim; he could have found the defendant was not injured as result of the delay which did exist; and, he could have found as a matter of law that to enforce the claim of the

complainants would not be inequitable and unjust to the defendant because of the delay which did exist. The Chancellor did not make a written findings of fact and conclusions of law other than as shown in the decree of the Court. From this decree and the holding of the Chancellor therein, we conclude he found these questions of fact and conclusions of law in favor of the complainants. We agree with the holding of the Chancellor in both aspects and overrule those Assignments of Error based upon the defense of laches.

The defendant is rather insistent that certain discrepancies in the testimony of Edd Freeman support the defenses of estoppel and laches. Defendant also insists the complainants are denied the benefit of any misunderstanding on their part because they obtained a quitclaim deed from Rollie Clemons to the heirs at law of Jeff Freeman and recorded it after they found and recorded the deed from Rollie Clemons to Jeff Freeman which conveyed the Clemons Lot. All of these matters were covered by direct and cross examination of the complainants who testified. The Chancellor apparently found the issues in favor of the complainants as to their understanding, their action, and their failure to act.

We must keep in mind the Chancellor saw and heard these witnesses and parties as they testified. By his decree the Chancellor established the credibility of these witnesses and parties. The Chancellor as the seer and hearer of these parties and witnesses was in a better position to determine the amount of weight to be given their testimony, and the credibility of each witness, than those who have not so observed. Lanius v. Donnell (1968) 222 Tenn. 58, 432 S.W.2d 659. Primarily, the determina-

tion of all issues on questions of laches and estoppel is the function of the Chancellor, and his decision thereon will not be reversed on appeal unless it is clearly shown to be wrong. 27 Am.Jur.2nd., Equity, sec. 176, p. 723.

It results all Assignments of Error by all appealing parties are overruled. The decree of the Chancellor is affirmed and this cause is remanded to the Chancery Court of Weakley County, Tennessee for the enforcement of that decree, and for other proceedings as may be necessary for settlement of the rights of the parties defendant as formed by the pleadings. Cost in this cause is adjudged against the defendant Martin Robowash, Inc.

Carney, P. W. (W.S.), and Puryear, J., concur.