IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
MAY 20, 2003 Session

## DENNIS JOSLIN COMPANY, LLC, as assignee of FIRST AMERICAN NATIONAL BANK, JACKSON v. WILLIAM L. JOHNSON

**Direct Appeal from the Chancery Court for Madison County**
**No. 57809     Joe C. Morris, Chancellor**

------------

**No. W2002-01427-COA-R3-CV - Filed November 3, 2003**

------------

This appeal arises from the order of the lower court denying Joslin's request for a deficiency judgment against Johnson. Joslin based its request upon a December 13, 1990 order of the Chancery Court of Madison County, Tennessee that obligated Johnson to repay a debt to FANB, Joslin's predecessor in interest. The lower court denied Joslin's prayer for relief, and discharged Johnson's obligation to satisfy the prior judgment, for two reasons. First, the lower court based its judgment on the failure of FANB to dispose of Johnson's collateral in a commercially reasonable manner. Second, the trial court found that the doctrine of laches bars Joslin's claim. For the following reasons, we affirm the ruling of the lower court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

W. Lewis Jenkins, Jr., Dyersburg, TN, for Appellant

R. Scott Pietrowski, Jackson, TN, for Appellee

**OPINION**

**Facts and Procedural History**

During the period of September 1987 to March 1989, William Johnson ("Johnson") entered into three separate loans with First American National Bank ("FANB"), which totaled $68,000. Johnson failed to repay the debt in a timely fashion, prompting FANB to obtain a judgment from the Chancery Court of Madison County, Tennessee on December 13, 1990. The judgment awarded FANB a total of $57,528.39 for the principal and interest outstanding on the debt, as well as fifteen percent of this sum for attorney's fees.

Prior to the December 1990 judgment, FANB had already taken possession of several pieces of collateral to satisfy the defaulted loan. These items included an International Dozer, a John Deere 7720 combine, a grain drill, a grain buggy, and a fuel wagon. The only item actually sold prior to the judgment was the International Dozer, which sold for $13,001 to Ray Alexander, the brother-in-law of a FANB officer assisting in collecting Johnson's debt. Credit for the sale of the dozer was applied to Johnson's debt prior to entry of the December 1990 judgment.[1] The disposition of the remaining items of collateral, after the judgment, is not as clearly documented. In fact, FANB and its successors in interest are only able to account for the disposition of the combine, which sold on March 13, 1991. Although an official appraisal of the combine's value was never obtained, the farm equipment dealership in Alamo, Tennessee, which undertook to sell the combine for FANB, opined that it should sell for approximately $30,000. Instead, it sold for only $16,600. A total of $15,438 from this sale was credited to Johnson's account. No credit was ever realized from the grain drill, grain buggy, or fuel wagon, nor did FANB and its successors ever account for the disposition of these items.

At the end of March 1991, the estate of A.V. Willis, a friend of Johnson, conducted an auction for the sale of various farm equipment and tools. Johnson alerted FANB of the auction, maintaining that he possessed an interest, amounting to $8553, in many of the items to be sold. An employee of FANB attended the auction and advised counsel for the estate that FANB might have a lien on some of the items to be sold. They agreed to let the auction go forward and determine the apportionment of proceeds later. The auction concluded, and, thereafter, neither FANB nor its successors pursued the matter of whether the bank was due any of the proceeds.

Some time following these events, FANB merged with AmSouth Bank, which became the successor in interest to the judgment against Johnson. On July 18, 2000, AmSouth Bank assigned the judgment against Johnson to Dennis Joslin Company, LLC ("Joslin"). Joslin then filed suit to enforce the judgment on September 27, 2000 in the Chancery Court of Madison County, Tennessee. This was the first effort by FANB or its successors to enforce the judgment since the estate sale of March 1991. Joslin alleged that the judgment remained unsatisfied and sought the amount of $110,358.10 to cover both the remaining principal and the outstanding interest on the judgment. At trial, Johnson maintained that he should be discharged from his obligation to satisfy the judgment because Joslin and its predecessors in interest had failed to dispose of the relevant collateral in a commercially reasonable manner, as required by the Tennessee Uniform Commercial Code. Specifically, Johnson argued that FANB failed to provide him notice regarding the disposition of collateral, as required by Tenn. Code Ann. § 47-9-504(3) (1990). He also argued that FANB failed to sell the collateral for a sufficient amount and that his account was never properly credited for the amounts realized from the sales. Finally, Johnson maintained, in the alternative, that the doctrine of laches barred any recovery to which Joslin might be entitled. In its final order of May 22, 2002, the lower court discharged Johnson from his obligation to satisfy the judgment entered against him on December 13, 1990. The trial court found that Joslin and its predecessors in interest had, indeed,

---

[1] The record indicates that Johnson owed the principal sum of $58,500 prior to the sale of the dozer. FANB sought and obtained a judgment for the principal amount of $45,499, which reflects a credit of $13,001.

failed to dispose of the relevant collateral in a commercially reasonable manner. The lower court further found that the doctrine of laches bars Joslin's claim, as Johnson has been prejudiced by the unreasonable delay of Joslin and its predecessors in attempting to satisfy the December 1990 judgment. Thereafter, Joslin timely filed this appeal challenging the ruling of the lower court.

## Issues

Joslin raises the following issues, as we perceive them, on appeal:

I.      Whether the lower court erred in finding that FANB and its successors in interest failed to dispose of Johnson's collateral in a commercially reasonable manner.
  A.      Whether the Tennessee Uniform Commercial Code applies to the sale of collateral after a judgment has been entered on the underlying debt.
  B.      Whether the disposition of Johnson's collateral was commercially reasonable.
II.     If the disposition of Johnson's collateral was commercially unreasonable, whether the lower court erred in discharging the entire amount of the underlying debt rather than just a portion thereof.
III.    Whether the lower court erred in applying the doctrine of laches to bar Joslin's claim.
  A.      Whether the doctrine is applicable when the relevant statute of limitations has not yet run.
  B.      Whether Johnson demonstrated any prejudice from the delay that justifies application of the doctrine.

## Standard of Review

The instant appeal involves two standards of review. The application of laches lies within the discretion of the trial court, and we must apply an abuse of discretion standard. *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 46 (Tenn. 1986). The other issues on appeal receive the applicable standard for judgments of a Chancellor sitting without a jury. Namely, our review of the Chancellor's findings of fact is *de novo* upon the record, accompanied by a presumption of the correctness of each finding, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) (2002). Our review of the lower court's conclusions of law is *de novo* with no presumption of correctness. *Union Carbide Corp v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## Law and Analysis

Joslin raises several issues on appeal, which can be grouped under three different headings. First, Joslin alleges that the lower court erred in finding that FANB and its successors failed to dispose of Johnson's collateral in a commercially reasonable manner. Next, Joslin argues that, even if the disposition was commercially unreasonable, it was error to discharge the entire amount of the debt owed by Johnson. Finally, Joslin contends that the lower court erred in applying the doctrine of laches to bar any claim against Johnson. We will begin our analysis with the final issue of laches.

In its final order, the lower court found, as a conclusion of law, that:

William L. Johnson has been prejudiced by the unreasonably [sic] and unjustifiable delay of First American National Bank and its successors and assigns in attempting to satisfy the judgment entered against him on December 13, 1990, such that the Court finds the doctrine of laches applicable, thereby also discharging William L. Johnson from any obligation to satisfy the judgment entered against him on December 13, 1990, and the judgment being sought by Dennis Joslin Company, LLC, in the present action.

Joslin asserts that the lower court's conclusion suffers from two errors. First, the trial court allegedly erred by applying laches where the applicable statute of limitations has yet to run. It then erred, according to Joslin, in finding that Johnson demonstrated prejudice from the delay that justifies application of the doctrine.

The defense of laches, in its most basic terms, provides that "equity will not intervene on behalf of one who has delayed unreasonably in pursuing his rights." *Hannewald v. Fairfield Communities, Inc.*, 651 S.W.2d 222, 228 (Tenn. Ct. App. 1983). Laches, however, requires more than mere delay. It requires an unreasonable delay that prejudices the party seeking to employ laches as a defense, and it depends on the facts and circumstances of each individual case. *Id.* (quoting *Brister v. Estate of Brubaker*, 336 S.W.2d 326, 332 (Tenn. Ct. App. 1960)). "[T]he determination of all issues on questions of laches and estoppel is the function of the chancellor, and his decision thereon will not be reversed on appeal unless it is clearly shown to be wrong." *Id.* (quoting *Freeman v. Martin Robowash, Inc.*, 457 S.W.2d 606, 612 (Tenn. Ct. App. 1970)).

We will first address Joslin's contention that laches should not be applied where the applicable statute of limitations has yet to run. Joslin maintains that Tenn. Code Ann. § 28-3-110 (1990) provides ten years to enforce a judgment and that this statutory period may not be cut short by the application of laches. In *Carpenter v. Wright*, 13 S.W.2d 51 (Tenn. 1928), the Tennessee Supreme Court addressed the interplay of laches and statutes of limitations. The Court held that:

[W]e think that the right of a defendant in equity to resist relief sought against him on the ground of long delay, although short of the statutory period of limitation, is in the nature of defense and is not taken away from him by such statutes. The statutes confer an additional defense.

*Id.* at 55. The foregoing analysis clearly establishes that laches may be applied in an action in equity prior to the running of a statute of limitations. The issue then becomes whether laches may likewise apply in an action at law, as in the present case. We answered this question in the affirmative in *Sutton v. Davis*, 916 S.W.2d 937 (Tenn. Ct. App. 1995):

Some jurisdictions hold that "the doctrine of laches is equitable in character and may not be invoked in a law action." [citation omitted] In our jurisdiction, however, the rule is

otherwise. This Court, in *Jansen v. Clayton*, 816 S.W.2d 49 (Tenn. Ct. App. 1991), speaking through Judge Cantrell, held that laches may also bar purely legal claims. Next we must determine whether a claim not statutorily barred may be subject to the defense of laches . . . [T]he doctrine is usually applied where no statute of limitations governs. However, on occasion, the doctrine is applied to bar a stale claim prior to the statute of limitations; but it should be applied in such cases when there is gross laches in the prosecution of the claim. *Clark v. American Nat'l Bak & Trust Co.*, 531 S.W.2d 563 (Tenn. Ct. App. 1974).

*Id*. at 940-41. As our decision in *Sutton* indicates, it was within the authority of the lower court to apply laches in the instant matter, prior to the running of Tenn. Code Ann. § 28-3-110. We, therefore, find Joslin's argument without merit on this issue.

We now turn to Joslin's assertion that the lower court erred in finding that Johnson demonstrated prejudice from the delay in enforcing the December 13, 1990 judgment. As we review the lower court's findings and analysis on this matter, we bear in mind that "[t]he application of the doctrine in the first instance lies within the discretion of the trial court and it will not be reversed except upon a showing of an abuse of discretion." *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 46 (Tenn. 1986). The lower court found, as an initial matter, that FANB and its successors failed to make any effort to collect on the judgment for nearly ten years. It also found that Johnson had lived at the same address throughout all that time. The court concluded that the delay was unreasonable and unjustifiable, as Joslin could adduce no evidence at trial that adequately explained the prolonged delay. The lower court then addressed the issue of prejudice, finding that Johnson demonstrated prejudice in two ways. First, Johnson presented evidence that he was unable to procure certain witnesses who had died since the entry of the December 13, 1990 judgment. Next, he demonstrated that the interest alone that had accrued during the delay exceeded the principal amount of the judgment rendered in 1990. The lower court found that the unavailability of witnesses and the unnecessary and preventable increased financial obligations occasioned by the delay both warranted application of the doctrine of laches. We cannot say that these findings constitute an abuse of discretion. The record indicates that at least three potential witnesses died during the delay in enforcing the judgment against Johnson. The record also shows that many thousands of dollars in interest accrued as a direct result of the long delay. The lower court was within its discretion to find that these developments warranted application of laches in the case at bar. Accordingly, we affirm the judgment of the trial court on this issue. Because the issue of laches is dispositive of the entire case, it is unnecessary to address the remaining issues on appeal.

### Conclusion

Based on the foregoing conclusions, we hereby affirm the decision of the lower court. Costs of this appeal are taxed to the Appellant, Dennis Joslin Company, LLC, and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE