IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2015 Session

**BILL BIVENS v. RANDY DWAINE WHITE, ET AL.**

**Appeal from the Chancery Court for Monroe County**
**No. 18651      Hon. Don R. Ash, Senior Judge[1]**

_____

**No. E2014-02251-COA-R3-CV-FILED-SEPTEMBER 16, 2015**

_____

This appeal involves an incumbent candidate's attempt to challenge the election for the office of Sheriff of Monroe County based upon the ineligibility of the other candidate. The incumbent candidate sought to claim the office or void the election. The trial court voided the election following a bench trial. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Jimmy W. Bilbo and Brent McIntosh, Cleveland, Tennessee, for the appellant, Bill Bivens.

Charles C. Burks, Jr., Knoxville, Tennessee, for the appellee, Randy Dwaine White.

E. Jerome Melson, Knoxville, Tennessee, for the appellee, Monroe County Election Commission.

**OPINION**

**I.      BACKGROUND**

    This action arose out of the August 2014 election for the office of Sheriff of Monroe County.  Pursuant to Tennessee Code Annotated section 8-8-102(b), the Tennessee Peace Officers Standards and Training ("POST") Commission certified the

_____

[1] Sitting by Supreme Court designation.

following two candidates to the Monroe County Election Commission ("MCEC"): Democrat Bill Bivens ("Bivens") and Republican Randy Dwaine White ("White").

Tennessee Code Annotated section 8-8-102 contains a number of requirements one must possess in order to qualify as a candidate for the office of sheriff. Prior to the election, Bivens received information indicating that White lacked the statutory qualifications to run as a candidate for the office of sheriff. As relevant to this case, White is alleged to lack the three years of full-time experience as a certified law enforcement officer within the previous ten years pursuant to section 8-8-102(a)(9)(A).[2] The record reflects that White filed his application for candidacy on November 22, 2013; therefore, the time period in question is from November 21, 2003, through November 21, 2013. During that time, White served as a police officer for the Monroe County Sheriff's Department ("MCSD") from November 22, 2003, through January 23, 2004, and then from September 15, 2004, through April 1, 2007. He later served as a police officer for the Vonore Police Department ("VPD") from March 28, 2012, through sometime in November 2012. While working for the VPD, White also acted as the Director of Emergency Medical Services ("EMS") for Monroe County.

On April 3, 2014, Bivens shared the information he received regarding White's lack of full-time experience with members of the POST Commission, including Executive Director Brian Grisham. On June 18, 2014, the POST Commission launched a formal investigation to verify the validity of White's affidavit in support of his candidacy. Citing Tennessee Code Annotated section 38-8-101(2),[3] the POST Commission determined that White did not have the requisite full-time experience because his primary source of income while working for the VPD was derived from his employment as the Director of EMS. The POST Commission decertified White as a candidate for the election and advised the MCEC of the decertification by letter, dated July 22, 2014.

The MCEC did not remove White from the ballot prior to the election, which was held as scheduled on August 7, 2014. Bivens received 4,869 votes, while White received 5,572 votes. The MCEC certified the election results on August 18. The next day,

---

[2] A candidate for the office of sheriff must "have at least three (3) years of full-time experience as a POST [C]ommission certified law enforcement officer in the previous ten (10) years or at least three (3) years of full-time experience as a state or federal certified law enforcement officer with training equivalent to that required by the POST [C]ommission in the previous ten (10) years[.]"

[3] "'Full-time police officer" means any person employed by any municipality or political subdivision of the state of Tennessee whose primary responsibility is the prevention and detection of crime, and the apprehension of offenders, and whose primary source of income is derived from employment as a police officer."

Bivens brought this action pursuant to Tennessee Code Annotated section 2-17-101(b)[4] as an election contest seeking to be declared the winner. He alternatively sought to void the election. Bivens sued both White and the MCEC, and its commissioners.

The defendants filed motions to dismiss. The MCEC argued that its role was limited to a ministerial capacity and that it was statutorily required to place qualified candidates on the ballot, tabulate the votes cast, and certify the results. The MCEC claimed that it did not receive information concerning White's alleged disqualification until after early voting had commenced. The commissioners argued that they were not individually liable because they acted in their official capacity as commissioners.

White argued that the action was barred by the doctrine of laches because Bivens "knowingly and intentionally waited through the time frame in which the [MCEC] can remove a name for cause . . . and did not file [suit] until after the election was completed." He asserted that he was prejudiced by the delay in filing suit as evidenced by the expense and time spent on his campaign. He also alleged that he did not lack the statutorily prescribed qualifications as a candidate as evidenced by the fact that he had accumulated more than three years of full-time experience as a law enforcement officer within ten years of filing his application on November 22, 2013. He asserted that the POST Commission erroneously relied upon the income qualification in Tennessee Code Annotated section 38-8-101(2). He provided that the General Assembly's prescribed qualifications for the election of sheriff do not contain an income qualification and that the POST Commission defines a full-time law enforcement officer as

> any person commissioned, sworn, appointed, and/or otherwise lawfully enjoined to uphold the laws of the State of Tennessee, and/or laws or ordinances of any municipality or political subdivision of the State of Tennessee; and who is employed by any municipality or political subdivision of the State of Tennessee or as a railroad police officer pursuant to § 65-6-133 and whose primary responsibility is (whether directly or as an experienced, certified, supervised/administrator of such persons), the prevention and detection of crime, and the apprehension of offenders, and specifically assigned duties and/or job descriptions reflect said primary responsibilities for the prevention and detection of crime[.]

He claimed that he was properly certified by the POST Commission as having the requisite full-time experience as a POST Commission certified law enforcement officer.

---

[4] The incumbent office holder and any candidate for the office may contest the outcome of an election for the office. Any campaign committee or individual which has charge of a campaign for the adoption or rejection of a question submitted to the people may contest the election on the question.

The trial court denied both motions to dismiss, and the case proceeded to a bench trial, at which several witnesses testified. Mark Allen Hall, a training supervisor for the Tennessee Law Enforcement Training Academy ("the Academy"), testified that he was assigned to investigate White's qualifications in June 2014. He submitted his findings in July 2014. He first determined that White had not falsified any documents in applying for the office of Sheriff of Monroe County because the required documentation simply requested affirmation as to whether White was "POST Certified" *or* had three years of "POST Certified or equivalent state or federal experience in the last ten (10) years." He noted that White is a POST Commission certified law enforcement officer and had maintained that status since 1993.

Mr. Hall testified that despite White's maintenance of his POST certification, White was not a statutorily qualified candidate for the office of Sheriff of Monroe County. Mr. Hall explained that White's employment with the VPD did not qualify as full-time experience pursuant to Tennessee Code Annotated section 38-8-101(2) because White's primary source of income during that time period was not derived from his position with the VPD. He admitted that the POST Commission classifies officers who work more than 20 hours per week as full-time and does not list an income qualification as a requirement for attaining full-time status. However, he noted that the POST Commission rules specifically refer to section 38-8-101 as an authoritative statute.

Mr. Hall testified that White received nominal income from March 28, 2012, through September 2012, as an officer for the VPD. He found that White worked full-time in April, May, and June of 2012. He could not find documentation concerning White's employment after June 2012. He acknowledged that he reviewed three affidavits from officers who worked with White during that time period but asserted that the affidavits were clearly blanket statements that had been prepared for the officers. He explained that White did not document a single call, write a single ticket, or provide a time sheet after June 2012. He recalled that Chief Randy Kirkland of the VPD admitted instructing White "to be seen and not heard" in preparation for the election.

Bivens testified that he was elected to serve as Sheriff of Monroe County in August 2006 and that he held the office until August 2014. He recalled that White worked for him as a patrol officer from September 2006 until April 2007. He related that he received a packet of information concerning White's qualifications in March 2014. The packet contained White's time sheets and a newspaper clipping of a story concerning a candidate who had been disqualified for the office of Sheriff of Loudon County. He provided the information to members of the POST Commission on April 3, 2014. He also periodically spoke with members of the POST Commission concerning White's qualifications. He admitted that he never contacted the MCEC but explained that he believed the POST Commission was responsible for determining whether a candidate

was qualified to receive the requisite certification for inclusion on the ballot. He asserted that he also spoke with someone on the State Election Commission. He agreed that he did not participate in a lawsuit to remove White from the ballot or contact the Attorney General for the 10th Judicial District.

Chief Kirkland testified that White worked for him on a part-time basis from 2010 until 2012. White later requested a full-time position in an effort to maintain POST Commission certification and qualify as a candidate for the office of Sheriff of Monroe County. Upon receiving approval from the POST Commission, he hired White as a full-time POST Commission certified officer on March 28, 2012. He provided White with nominal pay to maintain liability insurance coverage.

Chief Kirkland testified that White never served as a primary officer for any shift and always maintained his employment as the Director of EMS while working for him. He explained that White agreed to work 30 to 32 hours per week and arrived for work "around 4:30 in the afternoon" and worked "until 11 or 12" at night. He assigned White a plain black cruiser, commonly referred to as the "black slip top." He related that White was responsible for slowing traffic on Highway 411 and assisting other officers. He recalled advising White not to write tickets but to assist other officers and "[b]e seen" by the community. He stated that White helped with road blocks, monitored traffic as requested, and wrote a total of seven tickets, six in April 2012 and one in June 2012.

Chief Kirkland believed that White gained full-time experience as a result of his position with the VPD. He identified White's time sheets from March 2012 through September 2012, some of which were completed by him and some of which were completed by White. He believed that White was present for the hours reflected but acknowledged that he usually left the office before White arrived and could not independently verify White's presence. He stated that White never turned in another time sheet or reported his time after September 2012 and that White quit working at some point in December 2012. He provided that despite the lack of documentation, he believed that White worked every Sunday after church from September 2012 through December 2012. He explained that he often passed White, who was usually parked in the black slick top on Highway 411, on his way to visit his mother every Sunday.

Courtney Dalton Viar testified that she is responsible for processing payroll and time sheets in the Town of Vonore as the city recorder. She identified White's payroll record and stated that he received his first regular payroll check on April 5, 2012, and that he was paid each pay period until he received his last regular payroll check on September 21, 2012. He also received a supplement payment on February 22, 2013.

White testified that he worked full-time for the VPD from March 28, 2012, through sometime in November 2012. He received a salary of approximately $20 per week from the VPD, but his primary source of income was derived from his employment as the Director of EMS. White explained that he sought employment with the VPD to maintain his POST Commission certification and to qualify as a candidate for the office of Sheriff of Monroe County. He asserted that his time records were accurate but agreed that he only occasionally worked on Sunday, despite Chief Kirkland's testimony to the contrary. He agreed that he did not have time records documenting his employment beyond September 21, 2012. He explained that he was not concerned about documenting his time because he was working for experience, not payment.

White agreed that he only wrote seven tickets throughout his tenure with the VPD and that he did not arrest anyone. He agreed that from April 2012 through June 2012, he was responsible for stopping vehicles, writing tickets, working accidents, providing assistance to other officers, and investigating methamphetamine laboratories. He acknowledged that he never had the opportunity to assist with an accident and that after June 2012, he essentially worked as a "back-up officer" and was not tasked with personally apprehending offenders or writing tickets. He asserted that he monitored traffic, interacted with the community, and provided assistance to other officers.

White testified that he would have simply taken a leave of absence from his position as Director of EMS while working for the VPD if he had known of the income qualification in Tennessee Code Annotated section 38-8-101(2). He agreed that he had knowledge of the POST Commission investigation but testified that he was surprised to learn that the POST Commission revoked his certification in July 2014, after early voting had already begun. He identified a press release, dated July 30, 2014, in which he advised the community that he would serve as Sheriff of Monroe County if he received the majority of the votes.

James Riley Brown, an administrator for the MCEC, testified that early voting started on July 18, 2014. He received a letter, dated July 22, 2014, from the POST Commission that provided, in pertinent part, as follows:

[White] is not a full-time police officer with the City of Vonore Police Department since his employment with the city did not comply with the requirements of T.C.A. § 38-8-101(2). Subsequently, [White] does not possess three (3) years of full-time experience as a certified law enforcement officer within the previous ten (10) years pursuant to T.C.A. § 8-8-102(a)(9)(A). Based on the results of the investigation, on July 18, 2014, the POST Commission rescinded [White's] certification to appear on

- 6 -

the ballot for the office of Sheriff of Monroe County. This action does not affect [White's] POST certification as a law enforcement officer.

The POST Commission realizes that the withdrawal deadline to remove [White's] name from the ballot has passed and that voting is currently underway. The POST Commission has sent a copy of this letter to the Office of the Secretary of State, Division of Elections and to the District Attorney General for the 10th Judicial District for review and further investigation, if necessary.

Mr. Brown testified that he was unable to remove White's name from the ballot because early voting had already commenced. He was unaware of any statute that would provide authority to remove someone from the ballot once voting had commenced. Accordingly, he prepared a press release for dissemination that provided, in pertinent part, as follows:

After [r]eviewing the POST Commission Letter and discussions with the Coordinator of Elections Office in Nashville, it has been determined it is too late for [White's] name to be removed from the Ballot. The letter received from the POST Commission was received after the withdrawal deadline for a candidate's name to be removed from the ballot. Therefore, [White's] name will remain on the Ballot and as a Candidate for Sheriff of Monroe County and if elected to this office by the voters of Monroe County, can serve as Sheriff.

A Candidate cannot be elected by default and a candidate who receives the majority vote will be the winner. If [White receives the majority vote, he] will be sworn in and take office on September 1.

Following the presentation of the above evidence, the trial court granted the MCEC's renewed motion to dismiss but denied White's renewed motion to dismiss. The case continued with testimony from Larry Summey, who served as the Mayor of Vonore in 2012. Mayor Summey confirmed that Chief Kirkland hired White as a full-time officer in 2012. He agreed to remit a nominal salary to secure liability insurance.

Michael David Bledsoe, the administrative captain for the MCSD, confirmed that White was employed with the MCSD from November 2003 until January 23, 2004, and from September 15, 2004, until April 1, 2007.

Michael Bruce Miller testified that he worked for the VPD as a patrol officer when White was hired in March 2012. His shift was from 2 p.m. to 2 a.m. each week. He claimed that White was present on a fairly consistent basis in the evening until 12 a.m. or

1 a.m. for approximately six or eight months until Fall 2012. He recalled interacting with White throughout his shift either by telephone or in person approximately every 30 minutes. He claimed that White assisted him on a regular basis. He related that White also patrolled Highway 411 and participated in one roadblock. He was aware that White was not responsible for writing tickets or apprehending offenders.

Sergeant Eric Watson of the VPD testified that he also worked with White. He related that he was assigned to the 2 p.m. to 2 a.m. shift but did not work on the same days as Mr. Miller. He recalled that White slowed traffic on Highway 411 and assisted him with calls. He claimed that White was the first responder to at least one call involving an altercation. He stated that he communicated with White by telephone or in person throughout his shift. He agreed that he did not actually know how many hours White worked each week. He recalled that White often worked until 12 a.m. but did not know when White arrived for work. He identified an affidavit in which he attested that White worked as a full-time patrol officer until November 2012. He acknowledged that he did not prepare the affidavit but asserted that he recalled working with White until some point in Winter 2012.

Officer Melinda Jane Fowler, the school resource officer for the VPD, recalled observing White parked on Highway 411 in his assigned car on the weekends.

Captain Travis Jones of the MCSD testified that he worked as a patrol captain in 2012. He recalled observing White's unmarked car on Highway 411 and interacting with White while on duty on at least one occasion in October 2012. He also observed White in uniform at little league football practice from August 2012 through October 2012. He did not know how many hours White worked per week.

Drill Sergeant Ray Haynes of the MCSD testified that he observed White working as a patrol office in Vonore in 2012. He recalled interacting with White while on duty on at least one occasion in Fall 2012. He did not know when White began working full-time or how many hours White worked per week.

White's relative, Deputy Franklin Steele of the MCSD, testified that he observed White in uniform at little league football practice on Mondays, Tuesdays, and Thursdays through the end of October 2012. He did not know when White began working full-time or how many hours White worked per week. He acknowledged that his testimony conflicted with evidence establishing that White did not work on Tuesdays or Thursdays.

Daniel Boothroyd, the fleet manager for the MCSD, also testified that he observed White in uniform at little league football practice in Fall 2012. He recalled that White patrolled the area in an unmarked police car throughout that same time period. He could

not recall which days he observed White. He too did not know how many hours White worked per week or when White last worked for the VPD.

The deposition of the Honorable Stephen Crump, Attorney General for the 10th Judicial District was provided to the court as an exhibit. General Crump testified that he was asked to review the POST Commission's report concerning White's qualifications for the office of Sheriff of Monroe County. He reviewed the provided information and determined that neither White nor Chief Kirkland committed any criminal acts. He explained that the evidence was insufficient to establish that either party acted with the intent to deceive the POST Commission.

Following the presentation of the above evidence, the trial court denied White's renewed motion to dismiss based upon the doctrine of laches, finding that "Bivens took all reasonable and appropriate steps to raise the issue of White's lack of qualification(s) prior to the election." The trial court found that White lacked the statutorily prescribed qualifications to hold the office of Sheriff of Monroe County because he did not possess three years of full-time experience as a POST Commission certified law enforcement officer. The court found no ambiguity or conflict between the statutory qualifications required by section 8-8-102 and the definition of "full-time" in section 38-8-101(2). The court alternatively found that even if the income qualification contained in section 38-8-101(2) did not apply, White lacked sufficient proof to establish that he worked full-time for the statutorily required three-year standard. Relying upon section 2-17-113, the trial court declared the election void. This timely appeal followed.

## II.     ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.      Whether the trial court erred in granting the MCEC's motion to dismiss.

B.      Whether the trial court abused its discretion by not applying the doctrine of laches to bar the election contest.

C.      Whether the trial court erred in finding that White was not qualified to run as a candidate for the office of Sheriff of Monroe County.

D.      Whether the trial court erred in voiding the election instead of declaring Bivens the winner.

E.       Whether the trial court erred in assessing the costs to Bivens.

## III.   STANDARD OF REVIEW

After a bench trial, we review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  Because the trial court is in the best position to observe witnesses and evaluate their demeanor, we afford great deference to a trial court's credibility determinations.  *Hughes v. Metro. Govt. of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011).  We review questions of law de novo with no presumption of correctness.  *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

This appeal also involves the interpretation of statutes.  Statutory construction is a question of law that is reviewed de novo without any presumption of correctness.  *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009).  This court's primary objective is to carry out legislative intent without broadening or restricting a statute beyond its intended scope.  *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002).  In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing.  *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005).  When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

Application of the doctrine of laches and the assessment of costs are matters generally within the trial court's discretion.  *See Perdue v. Green Branch Min. Co.*, 837 S.W.2d 56, 60 (Tenn. 1992) ("Adjudging costs is within the reasonable discretion of the trial court[.]"); *Progressive Cas. Ins. Co. v. Chapin*, 243 S.W.3d 553, 561 (Tenn. Ct. App. 2007) (providing that an award of costs lies within the discretion of the trial court); *Brown v. Ogle*, 46 S.W.3d 721, 727 (Tenn. Ct. App. 2000) (providing that the application of the doctrine of laches lies within the discretion of the trial court).  A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).  If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative.  *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV.   DISCUSSION

A.

While not raised as an issue on appeal by Bivens, the MCEC argues that the trial court did not err in dismissing the complaint against it and its commissioners. We agree with the MCEC. The MCEC operates in a ministerial capacity and does not have the discretion to remove candidates from the ballot without statutory authority.[5] Tenn. Code Ann. § 2-5-204; *see City of Memphis v. Shelby Cnty. Election Comm'n*, 146 S.W.3d 531, 535 (Tenn. 2004) (discussing the ministerial role of an election commission); *see also Moss v. Evans*, No. E2014-02277-COA-R3-CV, 2015 WL 4366498, at *8 (Tenn. Ct. App. July 16, 2015) (acknowledging the ministerial role of an election commission). White never filed a request to withdraw from the election. Tenn. Code Ann. § 2-5-204(b). Accordingly, we affirm the dismissal of the MCEC and its commissioners as parties to this suit.

B.

White argues that the trial court abused its discretion by denying his motion to dismiss based upon the doctrine of laches. Citing *Taylor v. Lawrence County*, No. M2010-02406-COA-R3-CV, 2011 WL 2015524 (Tenn. Ct. App. May 23, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011), he claims that he was prejudiced by Bivens' delay in filing suit as evidenced by his expenses and use of vacation time to campaign. Bivens does not respond on appeal to White's claim of laches.

"Generally, the doctrine of laches applies to actions not governed by a statute of limitations. It may be applied, however, even where the action is governed by a statute of limitations when the plaintiff is guilty of gross laches." *Gleason v. Gleason*, 164 S.W.3d 588, 592 (Tenn. Ct. App. 2004) (citing *Dennis Joslin Co. v. Johnson*, 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003)). "'The defense of laches is based [up]on the doctrine of equitable estoppel, and is only applied where the party invoking it has been prejudiced by the delay.'" *Brown*, 46 S.W.3d at 726 (quoting *Freeman v. Martin Robowash, Inc.*, 457 S.W.2d 606, 611 (Tenn. Ct. App. 1970)). Thus, the doctrine of laches "requires more than mere delay." *Dennis Joslin Co., LLC v. Johnson*, 138 S.W.3d 197, 200 (Tenn. Ct. App. 2003). "It requires an unreasonable delay that prejudices the party seeking to employ laches as a defense, and it depends on the facts and circumstances of each individual case." *Id.* (citing *Brister v. Estate of Brubaker*, 336 S.W.2d 326, 332 (Tenn. Ct. App. 1960)). "The courts are reluctant to sustain the defense of laches, and in a case where the delay in filing the suit can be reasonably explained or justified, such a defense

---

[5] Tennessee Code Annotated section 8-8-102 was amended, effective July 1, 2015, to provide a procedure for the removal of a candidate's name on the ballot in the event that the POST Commission determines a candidate is no longer qualified for the office of sheriff.

will not be heard." *Freeman*, 457 S.W.2d at 611. "[A]pplication of the doctrine . . . lies within the discretion of the trial court." *Brown*, 46 S.W.3d at 727.

Bivens filed the election contest within the applicable statute of limitations pursuant to Tennessee Code Annotated section 2-17-105. Thus, White was tasked with establishing that Bivens was guilty of gross laches. The record reflects that Bivens received information concerning White's lack of qualifications at some point in March 2014. He relayed the information he received to members of the POST Commission on April 3, 2014. White alleges that Bivens should have initiated a complaint with the MCEC or pursued a quo warranto suit with the State of Tennessee instead of simply relying on the POST Commision. The POST Commission is the entity responsible for verifying a candidate's qualifications for the office of sheriff. Tenn. Code Ann. § 8-8-102(b). Unlike the situation presented in *Taylor*, the POST Commission actually initiated an investigation, and at some point, White was notified of the investigation and interviewed concerning his qualifications. With these considerations in mind, we conclude that it was reasonable for Bivens to pursue relief through the POST Commission and that the trial court did not abuse its discretion by not applying the doctrine of laches to bar the election contest.

## C.

White argues that the trial court erred in finding that he was not qualified as a candidate for the office of Sheriff of Monroe County when he was a POST Commissioned certified law enforcement officer while working for the MCSD and the VPD. He argues that consideration of the General Assembly's definition of "full-time" in section 38-8-101(2) creates an impermissible restriction on the qualifications for the office of sheriff to the extent that it contains an income qualification. He explains that the General Assembly did not include an income qualification in its requirements for candidacy in section 8-8-102.

As pertinent to this appeal, Tennessee Code Annotated 8-8-102 provides as follows:

> (a) After May 30, 1997, to qualify for election or appointment to the office of sheriff a person shall:
>
> * * *
>
> (9)(A) [H]ave at least three (3) years of full-time experience as a POST commission certified law enforcement officer in the previous ten (10) years or at least three (3) years of full-time experience as a state or federal

certified law enforcement officer with training equivalent to that required by the POST commission in the previous ten (10) years; provided, that any person holding the office of sheriff on May 30, 2011 shall be deemed to have met the requirements of this subdivision (a)(9).

The record reflects that White was a POST Commission certified law enforcement officer on the date he filed his affidavit in pursuit of the office of Sheriff of Monroe County. However, the record also reflects, and the parties appear to agree, that White did not have the requisite three-years of "full-time" experience unless approximately three and a half months of his employment with the VPD qualified as "full-time" experience as a POST Commission certified law enforcement officer.

The General Assembly's definition of "full-time" and the POST Commission's definition of "full-time" are different. White urges this court to use the POST Commission's definition and claims that the General Assembly's use of the term "law enforcement officer" in section 8-8-102 as opposed to the use of the term "police officer" in 38-8-101(2) lends further credence to his assertion that the POST Commission's definition of "full-time" is applicable. A cursory review of the pertinent statutes reveals that the General Assembly uses the terms "police officer" and "law enforcement officer" interchangeably without distinction.

The General Assembly defines a full-time police officer as

any person employed by any municipality or political subdivision of the state of Tennessee whose primary responsibility is the prevention and detection of crime, *and* the apprehension of offenders, *and* whose primary source of income is derived from employment as a police officer.

Tenn. Code Ann. § 38-8-101(2) (emphasis added). White's employment with the VPD cannot be classified as "full-time" experience pursuant to section 38-8-101(2) because his primary source of income was derived from his employment as the Director of EMS.

Unlike section 38-8-101(2), the POST Commission classifies all law enforcement officers who work in excess of 20 hours per week as "full-time" and further defines a "law enforcement officer" as

any person commissioned, sworn, appointed, and/or otherwise lawfully enjoined to uphold the laws of the State of Tennessee, and/or laws or ordinances of any municipality or political subdivision of the State of Tennessee; and who is employed by any municipality or political subdivision of the State of Tennessee or as a railroad police officer pursuant

- 13 -

to § 65-6-133 and whose primary responsibility is (whether directly or as an experienced, certified, supervised/administrator of such persons), the prevention and detection of crime, and the apprehension of offenders, and specifically assigned duties and/or job descriptions reflect said primary responsibilities for the prevention and detection of crime[.]

The POST Commission also specifically references section 38-8-101 as an authoritative statute, thereby indicating inclusion of the income qualification in section 38-8-101(2).

The POST Commission derives its authority from Tennessee Code Annotated section 38-8-102, which tasks the POST Commission with "[e]stablish[ing] uniform standards for the employment and training of police officers, including preemployment qualifications and requirements for officer certification[.]" However, the General Assembly determines the qualifications for the office of sheriff. Tenn. Const. Art., VII, Sec. 1. Accordingly, we agree with the trial court that the General Assembly's definition of "full-time" controls the issue. With all of the above considerations in mind, we affirm the trial court's determination that White was not qualified as a candidate for the office of Sheriff of Monroe County pursuant to Tennessee Code Annotated section 8-8-102(a)(9)(A).

D.

Bivens argues that the trial court erred in voiding the election. He claims that he is the duly elected winner pursuant to Tennessee Code Annotated section 2-17-112(a)(4). White and the MCEC respond that the trial court did not err in voiding the election pursuant to Tennessee Code Annotated section 2-17-113.

Following an election contest hearing, the trial court must give judgment either

(1) Confirming the election;

(2) Declaring the election void;

(3) Declaring a tie between persons who have the same number of votes if it appears that two (2) or more persons who have the same number of votes have, or would have had if the ballots intended for them and illegally rejected had been received, the highest number of votes for the office; or

(4) Declaring a *person* duly elected if it appears that *such person* received or would have received the highest number of votes had the ballots *intended for such person* and illegally rejected been received.

Tenn. Code Ann. § 2-17-112(a) (emphasis added). A plain reading of the statute reveals that Bivens is not entitled to relief pursuant to Tennessee Code Annotated section 2-17-112(a)(4). Ballots intended for Bivens were not illegally rejected. On the contrary, White was disqualified as a candidate because he did not have the requisite experience pursuant to section 8-8-102(a)(9)(A). Thus, the trial court was authorized to void the election pursuant to section 2-17-113, which provides as follows:

> If the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of constitutional disqualifications on that person's part or for other causes, the election shall be declared void.

Bivens argues that section 2-17-113 does not apply because the votes cast for White were illegal; however, he does not allege any illegality in the manner and form of the election or the way in which the votes were tabulated. Instead, he argues that White was not entitled to any votes because White was not a qualified candidate. In such cases, section 2-17-113 controls the issue. We affirm the trial court's judgment voiding the election.

E.

Bivens argues that the trial court erred in assessing costs against him when he was the prevailing party at trial. As relevant to this appeal, Rule 54.04(1) of the Tennessee Rules of Civil Procedure provides,

> Costs included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs[.]

Likewise, Tennessee Code Annotated section 20-12-119 provides, in pertinent part, as follows:

> (a) In all civil cases, whether tried by a jury or before the court without a jury, the presiding judge shall have a right to adjudge the cost.

> (b) In doing so, the presiding judge shall be authorized, in the presiding judge's discretion, to apportion the cost between the litigants, as in the presiding judge's opinion the equities of the case demand.

- 15 -

Bivens was not the prevailing party on all issues at the trial court level as evidenced by the court's dismissal of the MCEC and its commissioners from the election contest. In deference to the trial court's discretion in such matters, we affirm the assessment of costs against Bivens.

## V. CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the trial court for further proceedings as may be necessary. Costs of the appeal are taxed one-half to the appellant, Bill Bivens, and one-half to the appellee, Randy Dwaine White.

_____
JOHN W. McCLARTY, JUDGE