

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 17, 2017 Session

## ASSOCIATES ASSET MANAGEMENT LLC v. ANGELA BLACKBURN

Appeal from the Chancery Court for Shelby County
No. CH-11-0200     James R. Newsom, Chancellor

_____

### No. W2016-00801-COA-R3-CV
_____

This is a breach of contract case.  After Appellant purchased a package of default loans, which contained Appellee's second mortgage note, Appellant waited almost four years to filed suit against Appellee for breach of contract.  Appellee raised laches as an affirmative defense.  The trial court held that gross laches applied to bar Appellant's lawsuit.  We conclude that the trial court abused its discretion in applying gross laches to bar Appellant's claim in that Appellee's injuries were only economic, and Appellee failed to pursue her claims for predatory lending, misrepresentation, and/or lender misconduct. Reversed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Christopher W. Conner and Roman Reese, Maryville, Tennessee, for the appellant, Associates Asset Management, LLC.

John D. Horne, Memphis, Tennessee, for the appellee, Angela Blackburn.

### OPINION

### I. Background

On or about January 21, 2004, Ken McFerrin, an employee of Lifetime Funding Co., Inc. ("Lifetime"), contacted Appellee Angela Blackburn, by letter, regarding her possible purchase of property located at 5318 Cherokee Rose Lane, Memphis, Tennessee (the "Property").  Lifetime acted as the loan broker for NLC, Inc. and as sales agent for

the Property. At trial, Ms. Blackburn testified that after she agreed to purchase the Property, but prior to closing, Mr. McFerrin informed her that the purchase money mortgage for the Property would be an 80/20 loan, *see* discussion *infra.* Mr. McFerrin advised Ms. Blackburn that if she entered into the transaction, paid her mortgage on time, and built her credit, she could refinance the loan after one year to a fixed-rate mortgage.

Ms. Blackburn closed on the Property on January 30, 2004. At the closing, she signed two promissory notes; the first note was an eighty percent first mortgage note, in favor of NLC, Inc.'s affiliated entity, First NLC Financial Services, LLC, in the principle amount of $162,400.00; this was an adjustable rate mortgage. In conjunction with the $162,400.00 note, Ms. Blackburn executed a first mortgage deed of trust to secure the loan. The second note was a twenty-percent, second mortgage, "balloon note," in favor of NLC, Inc. in the amount of $40,600.00 (the "Note"). This Note is the subject of the instant appeal. The Note carried a fixed interest rate of 11.99% and had a term of fifteen years, with the first payment of interest and principle due on March 1, 2004. The Note was secured by a second Deed of Trust (the "Deed") on the Property. The Deed, which Ms. Blackburn also signed, specified that the Note may be accelerated on breach; allowed the holder of the Note to collect attorney's fees; and allowed for foreclosure on the Property. At the time of closing, Ms. Blackburn received and acknowledged two notices of Assignment, which she understood to allow NLC, Inc. to transfer the loans to OCWEN Mortgage. Thereafter, NLC, Inc. and its affiliates assigned the Note and the Deed to OCWEN Mortgage.[1]

On or about January 17, 2005, OCWEN Mortgage sent Ms. Blackburn a letter informing her that she was in default on her first mortgage. On July 17, 2005, OCWEN Mortgage's assignee, Specialized Loan Servicing, LLC ("SLS"), notified Ms. Blackburn of its intent to foreclose on the Property, and Ms. Blackburn relinquished the Property to OCWEN Mortgage. On March 6, 2006, OCWEN Mortgage foreclosed on the Property under the first mortgage note and deed of trust.

Although Ms. Blackburn testified that she attempted to refinance the mortgage, she discovered that refinancing could not be accomplished because the value of the Property was insufficient to support the refinance of the mortgage indebtedness. Ms. Blackburn obtained an attorney. On March 20, 2008, the attorney notified SLS that Ms. Blackburn had been the victim of predatory lending, commercial misrepresentation, and/or lender misconduct, and that she was "unable and unwilling to negotiate any

---

[1] Although the transcript of the hearing indicates that the foregoing documents were admitted into evidence, none of the trial exhibits are contained in the appellate record. The Note at issue is attached to the Complaint. However, any information regarding the nature or content of documents other than the Note is taken from the testimony adduced at the hearing.

repayment plan." However, Ms. Blackburn did not pursue any of these claims.

The Note that is the subject of the instant appeal was also assigned to SLS, and Ms. Blackburn fell into default on that Note. Ms. Blackburn's last payment on the Note was on May 10, 2005, and there was no further contact between OCWEN Mortgage and Ms. Blackburn.

On November 20, 2007, Appellant Associates Asset Management ("AAM"), a company that purchases and collects foreclosed debt, purchased Ms. Blackburn's Note as part of a default loan package. At the hearing, Mark Mancuso, who is the custodian of AAM's records, testified that Appellant bought the Note with the knowledge that the Property had been sold to satisfy the first mortgage such that the Note was unsecured at the time Appellant purchased it. According to Mr. Mancuso's testimony, on December 18, 2007, AAM sent Ms. Blackburn a letter, informing her of its purchase of the Note and of her default on same. On February 12, 2008, AAM commenced collection efforts on the Note. Between February of 2008 and February of 2009, AAM sent five additional letters to Ms. Blackburn demanding payment. Each of these letters warned of the possibility of legal action and suggested that the parties work out some solution. After February 4, 2009, there was no further communication between the parties until Appellant filed suit. On December 23, 2009, Ms. Blackburn closed on another home, in conjunction with which she incurred a new mortgage debt of approximately $186,459.00.

AAM filed suit against Ms. Blackburn on February 7, 2011. On February 28, 2011, Ms. Blackburn filed an answer and Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss, wherein she argued, *inter alia*, that Appellant's complaint should be dismissed on grounds of: (1) the running of the six-year statute of limitations, Tenn. Code Ann. § 28-3-109(a)(3); (2) laches; (3) equitable estoppel; (4) voluntary assumption of speculative risks; and (5) unclean hands. AAM opposed the motion to dismiss by response filed on April 28, 2011. The case proceeded to trial on December 17, 2015. At the time of the trial, the total amount due on the Note, including principal and interest, was approximately $92,736.12.

On March 8, 2016, the trial court entered its findings of fact and conclusions of law, wherein it found that AAM was guilty of gross laches, thus "defeating its contractual claim." On April 14, 2016, the trial court entered a judgment in favor of Ms. Blackburn, holding that Ms. Blackburn "is hereby awarded Judgment, Dismissing the claim filed against her by . . . [AAM]." AAM appeals.

## II. Issue

In its appellate brief, AAM states the issue for review as follows:

The sole issue is whether or not the trial court properly held that Appellee pled and proved her affirmative defense of gross laches and rightly dismissed Plaintiff's entire cause of action.

### III. Standard of Review

"The defense of laches is based on the doctrine of equitable estoppel, and is only applied where the party invoking it has been prejudiced by the delay." ***Brown v. Ogle***, 46 S.W. 3d 721, 726 (Tenn. Ct. App. 2000). Accordingly, courts are to sustain the defense of laches only in comparatively rare cases. ***S.M. Williamson & Co. v. Ragsdale***, 170 Tenn. 439, 95 S.W.2d 922 (1936).

A trial court's decision regarding whether to apply the doctrine of laches will not be reversed absent an abuse of discretion. ***In re Estate of Baker v. King***, 207 S.W.3d 254, 264 (Tenn. Ct. App. 2006); ***Griffin v. Lester***, No. W2004-02072-COA-R3-CV, 2005 WL 3199279, at *5 (Tenn. Ct. App. Nov. 30, 2005). Under the abuse of discretion standard, the trial court's decision "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." ***Camp v. Camp***, No. W2010-01037-COA-R3-CV, 2011 WL 2567542, at *5 (Tenn. Ct. App. June 29, 2011) (quoting ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). The abuse of discretion standard involves "a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010) (citing ***Beard v. Bd. of Prof'l Responsibility***, 288 S.W.3d 838, 860 (Tenn. 2009)). The standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." ***Lee Medical***, 312 S.W.3d at 524 (citing ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Accordingly, appellate courts are not permitted to "second guess" the trial court's determinations or to substitute their judgment for that of the trial court. ***Lee Medical,*** 312 S.W.3d at 524 (citing ***White v. Vanderbilt Univ.***, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." ***Lee Medical,*** 312 S.W.3d at 524 (citing ***Boyd v. Comdata Network, Inc***., 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

As to whether the defense of laches has been proven, in ***Freeman v. Martin Robowash, Inc***., 457 S.W.2d 606 (Tenn. Ct. App. 1970), this Court delineated the questions of fact and the questions of law involved in the defense:

> The defense of laches presents a mixed question of law and fact. Two essential elements of fact are negligence and unexcused delay on the part of the complainant in asserting his alleged claim, which result in injury to the party pleading laches. ***Sunderhaus v. Perel & Lowenstein*** (1965) 215

Tenn. 619, 388 S.W.2d 140. The question whether in view of the established facts, relief is to be denied—that is, whether, it would be inequitable or unjust to the defendant to enforce the complainant's right—is a question of law. 27 Am. Jur. 2d, Equity, § 176, pp. 722–723.

*Id.* at 611. This case was tried without a jury. Therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

As noted above, a breach of contract action, such as the one at bar, is subject to a statutory, six-year statute of limitations. Tenn. Code Ann. §28-3-109(a)(3). Generally, the doctrine of laches applies to actions not governed by a statute of limitations. ***Dennis Joslin Co. v. Johnson***, 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003). However, it may be applied even where the action is governed by a statute of limitations when the plaintiff is guilty of gross laches. *Id*. Because Appellant's breach of contract action is governed by the applicable statute of limitations, the doctrine of gross latches, as opposed to ordinary latches, applies. In its brief, Appellant first asserts that the defense of laches is waived because it was not properly pled. Specifically, Appellant takes issue with the fact that Appellee raised "laches" as an affirmative defense, but did not specify "gross laches." In the first instance, Tennessee Rule of Appellate Procedure 8.03, which governs affirmative defenses, requires "laches" to be set forth as an affirmative defense, but the rule does not make a distinction between gross and ordinary laches. Accordingly, we conclude that Ms. Blackburn's plea of "laches" was sufficient to put Appellee on notice that Ms. Blackburn was claiming the defense. The question of whether gross or ordinary laches applies is a question of law based on whether there is an applicable statute of limitations. The type of laches applicable would, therefore, fall to the purview of the court**.** Regardless, our holding, *infra*, that gross laches is not applicable in this case negates Appellant's argument that Ms. Blackburn's pleading of laches was not sufficiently specific.

Whether gross or ordinary, the equitable doctrine of laches must be based on a finding of inexcusable negligent, or unreasonable delay on the part of the party asserting the claim. ***Archer v. Archer***, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995). It is an equitable defense, which requires the finder of fact to determine whether it would be inequitable or unjust to enforce the claimant's rights. *Id*. Gross laches occurs where there has been a "long and unreasonable acquiescence in adverse rights." ***John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.***, 715 S.W.2d 41, 46 (Tenn.1986)

(quoting *Ledford v. Lee*, 200 S.W.2d 393, 398 (Tenn. Ct. App. 1946)), *perm. app. denied* (Tenn.1947) (quoting Gibson's Suits in Chancery, § 70, p. 87)). Further, gross laches requires prejudice to the defendant such as the loss of evidence and witnesses. ***Dennis Joslin Co***., 138 S.W.3d at 201.

As set out in its findings of fact, the trial court found that AAM's delay in pursuing its breach of contract claim prejudiced Ms. Blackburn in two ways.

> In view of the established facts, the court concludes that Ms. Blackburn has proven gross laches on the part of [AAM], making it unjust to enforce [AAM's] contractual rights. . . . [AAM] stands accountable for the delay in the enforcement of the second mortgage Note from Ms. Blackburn's default on May 10, 2005 until its acquisition of the Note on or about December 18, 2007. Thereafter, [AAM] sent five letters to Ms. Blackburn demanding payment on the Note from the period of February 12, 2008 to February 4, 2009. . . .

> During the next two year period, until [AAM] filed the Complaint on February 7, 2011, [AAM] failed to communicate with Ms. Blackburn concerning its intentions. Hearing nothing, Ms. Blackburn, to her prejudice, incurred a substantial new mortgage obligation, which she would not have done but for the delay on the part of [AAM]. Moreover, at trial, [AAM] sought an award through December 17, 2015 of $92,736.12 on a Note, the principal amount of which was $40,412.69—reflecting that interest had accrued in more than twice the principal amount of the Note in nearly twelve years between the execution of the Note and trial. While Ms. Blackburn could not contend that she had suffered a loss of evidence and witnesses, the considerable accumulation of interest resulting from the unjustified delay of [AAM] bolsters further the court's conclusion that [AAM] is properly cited for gross laches, defeating its contractual claim. The court concludes that it would be inequitable or unjust to enforce [AAM] rights under the circumstances at bar.

As acknowledged by the trial court, the "injuries" found in this case are of a purely economic nature, i.e., Ms. Blackburn took on significant debt and accrued significant interest on the Note. Although economic damages may certainly be considered in determining whether a party claiming laches has been injured or prejudiced by delay, *see* discussion *infra*, the nature of the doctrine usually requires some injury or prejudice more than monetary. As discussed in 30A C.J.S. Equity §147:

> Prejudice is an essential element of the assertion of laches. . . .

However, not every change in conditions will constitute prejudice within the doctrine of laches, and whether an injury cognizable under the doctrine of laches occurs depends on assessing the inherent equities of the particular case. Laches is usually involved in situations where the delay in prosecuting the claim has made the claim harder to defend against, or where money or valuable services will be wasted as a result of the delay. Prejudice, supportive of laches, may thus be demonstrated by a showing of injury, change of position, loss of evidence, unavailability of witnesses, or some other disadvantage resulting from delay, which diminish a defendant's chances of success. . . . Prejudicial harm does not occur merely because one loses what he or she otherwise would have kept. There must be a delay which causes a disadvantage in asserting and establishing a claimed right or defense, or other damage caused by detrimental reliance.

(Footnotes omitted).

In an early case, **Evans v. Steele**, the Tennessee Supreme Court discussed the type of injury or prejudice that is contemplated under the doctrine of gross latches:

Delay merely is not sufficient to repel complainant in a court of equity. The true doctrine concerning laches is believed to be that, in order for it to operate as a bar to complainant's suit, it may have resulted in **prejudicial delay**. Relief is generally refused by courts of equity, because of the lapse of time, **only in such cases where the loss of evidence, death of witnesses or parties, and failure of memory resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and make it impossible for the court to pronounce a decree with confidence**. **Bolton v. Dickens**, 4 Lea, 577. However, it is not essential that the defendants show absolutely that a defense has been lost or a right obscured as a result of the delay. It is sufficient that it appear to the court that the complainant's demand is uncertain, or that the defendant probably had a good defense to the suit. Where entire justice cannot be done by reason of the gross negligence or deliberate delay of the complainant to assert his claim, equity will not aid a party whose application is "destitute of conscience, good faith, and reasonable diligence." **Mackall v. Casilear**, 137 U. S. 556, 11 Sup. Ct. 178, 34 L. Ed. 776. The doctrine of laches in courts of equity is not an arbitrary or a technical doctrine. No hard and fast rule for its application can be formulated. But, when the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. It is not required that the defendant should establish by proof an affirmative injury. It is

sufficient if by the laches and delay of complainant **it has become doubtful whether the defendant can command the evidence necessary to a fair presentation of the case**. Or, if it can be seen that the defendant has been deprived of an advantage he might have had if the complainant's claim had been seasonably presented, a court of equity will not interfere to grant relief.

***Evans v. Steele***, 145 S.W. 162, 165 (Tenn. 1912) (emphases added).   As further explained in Gibson's Suits in Chancery:

The Court realizes the difficulty of doing entire justice, when the original transaction has become obscured by time and the evidence lost. . . .   The Court frowns upon attempts to unsettle what has long been at rest, first, because of the difficulty, if not impossibility, of making proof; second, because, in uprooting an ancient matter, innocent persons are liable to be injured; third, because the defendant, even if originally in the wrong, may, as a result of the plaintiff's laches, have acquired such affirmative rights that he cannot be placed in *statu quo*; and fourth, because the delay raises a presumption that originally there was, if not a good defense, at least a better one than can now be made. . . .   Laches based solely on lapse of time is generally not a bar to action.

Laches will bar actions . . . (5) to have a contract either rescinded or specifically enforced, when by delay the parties cannot be placed in *statu quo*; (6) or to have any transaction uprooted, or any business unraveled, when, in consequence of long acquiescence, the chances are that material evidence has been lost, that the memory of the facts has become dimmed, that parties or witnesses have died or removed, and that new rights have sprung up that should not be unsettled.

William H. Inman, ed. Gibson's Suits in Chancery §95 (7th ed. 1988).

As set out in its findings, *supra*, the trial court specifically acknowledged that Ms. Blackburn had suffered no detriment to her ability to defend against the lawsuit, e.g. loss of witnesses or evidence.  A review of relevant Tennessee cases indicates that economic injury, without some accompanying injury or prejudice to the defendant's ability to defend against the lawsuit, is not sufficient to invoke the doctrine of gross latches.  In ***Riggan v. Askew***, this Court affirmed the trial court's denial of appellant's gross laches defense, stating, in relevant part, that:

Askew also asserts on appeal that Riggan's cause of action is barred by the

equitable doctrine of laches. . . . Askew contends that Riggan's delay in filing suit resulted in over $250,000 in interest accruing on a $75,000 outstanding loan balance over an 18 year period. Askew also notes that Riggan lost many of the partnership's tax and financial records. Askew, however, fails to explain how the loss of the records prejudiced his defense. Riggan's expert witness, Robert Hester C.P.A., testified that the partnership documents contained all the information necessary to provide an accurate accounting of the partnership's finances.

*Riggan v. Askew*, No. 02A01-9511-CH-00246, 1997 WL 675462, *7 (Tenn. Ct. App. Oct. 29, 1997). Although the **Riggan** appellant, like Ms. Blackburn, was able to prove financial detriment from appellee's delay, in the absence of a showing that appellant was prejudiced in the defense of the lawsuit, laches would not lie. In *Gleason v. Gleason*, this Court stated:

> Mr. Gleason asserts Ms. Gleason made no effort to enforce her right to alimony for a period of over 12 years, and that he was prejudiced in that a substantial award, plus interest, has now been adjudicated against him. The trial court, however, determined Ms. Gleason was not guilty of laches. The trial court . . . determined that no prejudice had resulted as a result of Ms. Gleason's delay. . . .

> In light of the record, we do not believe gross laches exists in this case which would justify restricting the statutory limitations period. In this case, there has been no loss of evidence or witnesses, no change in the party's rights, no change in the value of the alimony award over time which would prejudice Mr. Gleason. . . .

*Gleason v. Gleason*, 164 S.W.3d 588, 592-93 (Tenn. Ct. App. 2004). Likewise, in *Brinton v. Brinton*, we held:

> Curtis asserted her right under the MDA as to both children when each went to college. We do not find her delay in enforcing the MDA unreasonable or inexcusable. No evidence was lost. Brinton maintains he was prejudiced by her delay in filing the petition because of the amount of interest assessed against him. In essence, Brinton maintains that Curtis should have made him do right sooner. He breached the MDA based on a figure he "just came up with," and he admits he has the ability to pay. We find that neither laches nor gross laches are applicable to this situation.

*Brinton v. Brinton*, No. M2009-02215-COA-R3-CV, 2010 WL 2025473, *5 (Tenn. Ct.

App. May 19, 2010).

However, even in those cases where the accrual of interest and fees has been found as a ground for gross laches, the economic damages have been coupled with other damages amounting to prejudice in defending the lawsuit. For example, in ***FinovaCapital Corp. v. Regel***, this Court affirmed the trial court's grant of summary judgment in favor of appellee on its finding that appellant's breach of contract suit was barred by appellant's laches. Although the appellee suffered economic damages in the accrual of interest and fees, it had also suffered loss of evidence:

> The record includes affidavits of Regel that, eight years after the dispute between the parties arose and it first refused payment to Finova, Regel had believed the dispute to be resolved; had undergone several changes in staff, including those responsible for the records regarding its transactions with Finova; and Regel's bank had destroyed records pertinent to the time of the breach. None of these assertions was disputed by Finova in the trial court. Further, as noted above, by the time Finova brought its action against Regel, over five years and four months had elapsed since the May 1998 order of the bankruptcy court, and Finova's claims for amounts resulting from interest and fees was greater than the amount equal to payments due under the lease.

***Finova Capital Corp. v. Regel***, 195 S.W.3d 656, 660-61 (Tenn. Ct. App. 2005). Likewise, in ***Dennis Joslin Co.***, this Court affirmed the trial court's finding of laches. In that case, the trial court found that one of the defendant's injuries was economic, i.e., accrual of interest. However, economic damage was not the sole basis for the finding of laches. Rather, the trial court found that appellee sustained two injuries as a result of appellant's delay:

> The lower court then addressed the issue of prejudice, finding that Johnson demonstrated prejudice in two ways. First, Johnson presented evidence that he was unable to procure certain witnesses who had died since the entry of the December 13, 1990 judgment. Next, he demonstrated that the interest alone that had accrued during the delay exceeded the principal amount of the judgment rendered in 1990. The lower court found that the unavailability of witnesses and the unnecessary and preventable increased financial obligations occasioned by the delay both warranted application of the doctrine of laches. We cannot say that these findings constitute an abuse of discretion. The record indicates that at least three potential witnesses died during the delay in enforcing the judgment against Johnson. The record also shows that many thousands of dollars in interest accrued as a

direct result of the long delay. The lower court was within its discretion to find that these developments warranted application of laches in the case at bar.

***Dennis Joslin Co.***, 138 S.W.3d at 201.

In short, we have found no Tennessee cases in which economic damages alone have been found to support a court's finding of gross laches. That being said, even if we assume, *arguendo*, that mere economic damages may support the defense, what will always negate laches is the comparative complacence of the party raising the defense. For example, in ***Brinceno v. Brinceno***, the trial court denied plaintiff/wife's contempt claim, wherein she sought alimony arrears. The trial court found that plaintiff/wife had failed to pursue her claim such that the trial court barred recovery. This Court reversed the trial court, finding that defendant/husband was equally at fault in the delay:

> [A]lthough Evelyn Nadine failed to pursue her contempt petition, **Mr. Briceno likewise failed to pursue his counter-petition to eliminate or reduce his alimony obligation**. Moreover, we see no prejudice to the estate in this case, as there is no loss of evidence, change in rights, or change in the value of the alimony award over time. . . . If anything, Mr. Briceno benefitted from the delay by retaining amounts he knew he owed. Even though Mr. Briceno himself is unable to defend the claim and testify to the purported oral agreement to terminate alimony payments, this inability does not prejudice the estate's position so much that the delay rises to the level of gross laches. **Mr. Briceno set out these points in his counter-petition yet chose not to pursue the matter beyond the filing**. We therefore reverse the trial court's ruling and conclude that Evelyn Nadine is entitled to a judgment against the estate for the unpaid alimony accruing up to his death.

***Brinceno v. Brinceno***, No. M2006-01927-COA-R3-CV, 2007 WL 4146280, *4 (Tenn. Ct. App. Nov. 21, 2007). (emphases added). As discussed above, by March 20, 2008, Ms. Blackburn had engaged an attorney, who notified Appellant's predecessor in interest that Ms. Blackburn had been the victim of predatory lending, commercial misrepresentation, and/or lender misconduct. Ms. Blackburn's argument that she lost the ability to raise these affirmative claims based on AAM's delay in filing suit is baseless. In the first instance, claims arising from alleged predatory lending are not simply affirmative defenses, but may constitute independent claims under the Tennessee Home Loan Protection Act, Tenn. Code Ann. § 45-20-103, *et seq*. Without opining as to the merits of any of these claims, suffice to say that Ms. Blackburn could have filed a lawsuit raising these claims at any time, whether AAM filed suit or not. Ms. Blackburn knew, at

least by March of 2008, that she had possible recourse to set aside the Note by filing a complaint; however, she did not pursue the matter beyond the attorney's letter. Any detriment to her claims of predatory lending, commercial misrepresentation, and/or lender misconduct were, therefore, caused by her own delay in pursuing the claims. The majority of Appellant's attempts to collect the Note occurred after Ms. Blackburn's attorney sent the letter, i.e., between February of 2008 and February of 2009. However, even after receiving AAM's demand letters, Ms. Blackburn did not pursue her claims to set aside the original transaction. "Equity aids the vigilant, not those who sleep upon their rights." Gibson's Suits in Chancery §25. In view of the fact that Ms. Blackburn neglected to pursue her claims of predatory lending, misrepresentation, or lender misconduct, and in light of the fact that any injury caused to Ms. Blackburn by Appellant's failure to pursue its breach of contract claim was purely economic, and the lack of any showing of prejudice to Ms. Blackburn concerning her ability to defend the lawsuit, we conclude that the trial court erred in finding gross laches and in dismissing Appellant's lawsuit. Having found that gross laches barred Appellant's claims, the trial court did not reach the merits of Ms. Blackburn's other defenses. Our holding does not preclude the trial court from considering her remaining defenses on remand.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's finding of gross latches and its dismissal of Appellant's claim for breach of contract. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellee, Angela Blackburn, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE